723 F.2d 1382
 115 L.R.R.M. (BNA) 2287
 The WEITZ COMPANY, INC., Appellee/Cross-Appellant,
v.
MO-KAN CARPET, INC., Western Casualty and Surety Company,
and United States Fidelity and Guaranty Company,
Appellants/Cross-Appellees.
 Nos. 83-1113, 83-1157.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1983.
Decided Dec. 29, 1983.
 
 Anna I. Shinkle, David C. Shinkle, Des Moines, Iowa, for appellants/cross-appellees.
 William J. Koehn, Diane M. Stahle, Des Moines, Iowa, for The Weitz Co., Inc.
 Before LAY, Chief Judge, SWYGERT,[1] Senior Circuit Judge, and ARNOLD, Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a diversity-contract dispute in which plaintiff-appellee Weitz Company, Inc. filed suit against defendant-appellant Mo-Kan Carpet, Inc. to recover damages because of Mo-Kan's non-performance of a construction contract. Following a bench trial the district court ruled in favor of Weitz and ordered Mo-Kan to pay damages of approximately $63,000.
 
 
 2
 Weitz was engaged as a general contractor responsible for construction of two federally-subsidized housing projects in Des Moines, Iowa. In September 1977 Mo-Kan submitted a bid to Weitz to install carpeting and flooring in the projects. Because the bid was not in the form required by the federal government, Weitz sent Mo-Kan the appropriate documents and Mo-Kan signed the contract.
 
 
 3
 At the time the contract was signed Weitz was party to a collective bargaining agreement with the local construction union, Carpenters Local Union 106 of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("the Union"). The agreement expressly prohibited piecework compensation. Mo-Kan's customary practice was to hire independent contractors. The contractors hired by Mo-Kan to complete the contracts in this case paid its workers on a piecework basis.
 
 
 4
 Mo-Kan workers had been on the job for two weeks when they were approached by the Union's local business agent. The agent asked to see union membership cards, which these workers did not have. The Union contacted a Weitz official who was told that the job would be shut down if Weitz did not remove the non-union workers. As a compromise, the union indicated that if the Mo-Kan workers would join the union, the job could be continued on a per piece basis. Mo-Kan refused to pay the union fees and walked off the job.
 
 
 5
 Weitz then demanded performance of the Luther Park Housing Project contract. Mo-Kan offered to complete the work, but only on a non-union piecework basis. Weitz stated that because of its contract with the union, and because the contract with Mo-Kan required Mo-Kan to conform to current labor practices, Mo-Kan was obliged to complete the work regardless of its labor problems with the Union. Weitz subsequently was forced to hire a new contractor and purchase materials on short notice (Mo-Kan refused to supply the materials for the project, as requested by Weitz).
 
 
 6
 Weitz filed suit against Mo-Kan[2] alleging that Mo-Kan breached the construction project by failing to adhere to the labor "practices and procedures" and by failing to complete the work. Weitz sought damages for its costs in hiring another subcontractor to install the carpeting and flooring.
 
 The district court held that
 
 7
 the provision of paragraph 13, which requires Mo-Kan to conform to Weitz's labor policies, practices and procedures, is clear and unambiguous; that such provision placed the duty on Mo-Kan to ascertain and comply with Weitz's labor policies; that Mo-Kan failed to do so; that had Mo-Kan performed this duty it would have learned that piecework payments were prohibited; that by paying by piecework it did not conform to Weitz's labor policies; that Mo-Kan left the job for its own reasons and was not ordered off the job by Weitz; that it breached the terms of the contracts covering Stone Crest and Luther Park.
 
 
 8
 In this appeal Mo-Kan argues that paragraph 13 is not unambiguous, and that extrinsic evidence should have been admitted tending to show the "real" intention of the parties. Weitz has filed a cross-appeal, arguing that the district court erred in computing interest on the damage award according to the federal standard, rather than the standard provided by Iowa statutes which allows prejudgment interest. For the reasons that follow, we affirm the district court judgment on the contract issue, but reverse in regard to prejudgment interest.
 
 
 9
 We agree with the district court that the contract entered into by Weitz and Mo-Kan is dispositive of this dispute. Paragraph 13 of that contract required Mo-Kan to "conform to Contractor's [Weitz's] labor policies, practices, and procedures." One such policy, as expressly stated in Weitz's agreement with the Union, precluded piecework payments. Although conceding that this portion of the contract placed an affirmative duty on the sub-contractor to ascertain and comply with Weitz's policies,[3] Mo-Kan argues that it nonetheless had no knowledge of the collective bargaining agreement between Weitz and the Union. This argument is without merit. A party to a contract is "bound by the document ... even though ... it has not expressly accepted all of the contract terms or is even aware of them." Wilmotte & Co. v. Rosenman Bros., Inc., 258 N.W.2d 317, 323 (1977).
 
 
 10
 Moreover, even if, as Mo-Kan argues, the bargaining agreement provision relating to piecework compensation were inapplicable in this case because the projects were residential construction, this would not excuse Mo-Kan's nonperformance. Paragraph 30 of the contract provides that Mo-Kan "agrees that no labor dispute of any kind involving Subcontractor [Mo-Kan], or his employees or agents shall be permitted to occur or be manifested on the Project ...." In our view this reflects a rather explicit intent on the part of Weitz not to become involved in the myriad potential disputes that might arise between a subcontractor and a labor union, whether it involves a union's erroneous interpretation of the collective bargaining or otherwise. This conclusion is supported by testimony at trial which established that Weitz officials told Mo-Kan to resolve its own labor problems. We find no merit in Mo-Kan's contention that not only should Weitz have mediated Mo-Kan's labor dispute, but should have borne the financial consequences of its nonperformance. In sum, the activity of the Union in this case does not mitigate Mo-Kan's obligation of performance under the contract with Weitz, and does not support Mo-Kan's impossibility of performance argument.
 
 
 11
 The final argument raised by Mo-Kan involves the Iowa Right to Work Law, Iowa Code Ann. Sec. 731.1 et seq. (West 1982).[4] Mo-Kan apparently argues that it was excused from performance because the Union and Weitz "conspired" to force Mo-Kan workers to join the Union, in violation of the above statute. We agree with the district court that the Right to Work Law has no application to this case. Neither the contract between Weitz and Mo-Kan nor the collective bargaining agreement between Weitz and the Union required union membership.
 
 
 12
 The final issue concerns the cross-appeal of Weitz. Weitz argues that, in this diversity suit, the district court erred in applying the federal interest statute rather than the Iowa interest statute. We hold that federal law governs the award of postjudgment interest in this case while state law governs the award of prejudgment interest. The federal judgment interest statute was amended and became effective October 1, 1982. Federal Courts Improvement Act of 1982, Pub.L. 97-164, Sec. 302(a), 96 Stat. 25, 55-56 (codified at 28 U.S.C.A. Sec. 1961(a) (Supp.1983)). Federal law now provides for interest from the date of judgment at a floating rate determined by the coupon yield of United States Treasury bills. The provision covers "any judgment in a civil case recovered in a district court." Id. No exemption is made for actions based on diversity of citizenship. This court must apply an applicable federal provision over a conflicting state provision, unless the federal provision is found unconstitutional. See Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965); U.S. Const. art. VI, cl. 2. We believe that the new federal interest statute is constitutional and therefore governs the award of postjudgment interest in this case. Accord Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp., 566 F.Supp. 1558, 1574 n. 46 (D.Del.1983); Lake Tahoe Sailboat Sales & Charter, Inc. v. Douglas County, 562 F.Supp. 523, 524 (D.Nev.1983); Interstate Fire & Casualty Co. v. Hartford Fire Insurance Co., 548 F.Supp. 1185, 1189 (E.D.Mich.1982). We affirm this portion of the district court's order.
 
 
 13
 The dissenting opinion, relying particularly on Bernhardt v. Polygraphic Co., 350 U.S. 198, 202, 76 S.Ct. 273, 275, 100 L.Ed. 199 (1956), suggests that because of the Erie doctrine the recent federal statute should not be interpreted to apply to diversity cases. In Bernhardt, the federal statute involved was the Arbitration Act, 9 U.S.C. Sec. 3, which was in conflict with state law on the question of the enforceability of an agreement to arbitrate. The Supreme Court narrowly construed the Arbitration Act in order to avoid the constitutional question whether the Act, if read to apply to diversity cases, would be invalid. In our view, this analysis is not applicable here, because the question of Congress's constitutional power to pass a law fixing a rate of interest on judgments entered by federal courts is not substantial. Congress has the power, under Article III of the Constitution, to ordain and establish inferior federal courts, including this Court and the District Court which entered the judgment below. It also has the power to pass all laws necessary and proper for the execution of powers specifically granted. The accrual of interest on judgments is an ordinary incident of judicial relief, and we think it clear that the power that creates the tribunal that enters the judgment can also provide for such ordinary incidents.
 
 
 14
 The Erie doctrine does not require a different result. Even if the rate of interest that a judgment will bear is in some sense "substantive," in that it is a part of the damages recovered by the winning side, it is also easily susceptible of characterization as "procedural," since it has to do exclusively with events that occur after a dispute gets to court. The question of interest, therefore, is at most in "the uncertain area between substance and procedure," and "rationally capable of classification as either." Hanna v. Plumer, supra, 380 U.S. at 472, 85 S.Ct. at 1144. It is therefore a subject with respect to which Congress has full power to legislate, even as to cases that get into the federal courts only because of diversity of citizenship.
 
 
 15
 The same result follows if the Erie question is analyzed under the "primary private activity" standard adopted by Justice Harlan's concurring opinion in Hanna v. Plumer, supra, 380 U.S. at 474-75, 85 S.Ct. at 1145-46. On this view, in diversity cases state law will govern those issues that relate to the parties' primary out-of-court conduct. The theory is that people plan their business conduct, in most instances, against a background of substantive rules of law created by state statutes or court decisions. A rule specifying the rate of interest that a judgment will bear is clearly outside this category. We doubt that anyone plans business conduct on the expectation that if a controversy erupts suit will be filed in federal court, rather than a state court, for the purpose of obtaining the benefit of a federal statute on post-judgment interest. There is, furthermore, a clear federal interest in enacting such a statute. At the time it was passed, the interest rate allowed on judgments by the laws of most states was much lower than the market rate. The intention of Congress, as clearly revealed in the legislative history, was to eliminate this incentive for not paying judgments. The result of the statute is to avoid frivolous appeals, which are a burden to the federal appellate courts, and also to encourage prompt payment of judgments to people who are owed money.
 
 
 16
 We note, in addition, that application of the federal statute is not likely to lead to forum-shopping. It seems unlikely that a plaintiff would select a forum simply because of the rate of interest that a judgment will bear, because there is no way to know what the rate will be until the judgment is entered. The federal statute provides for a rate that floats from time to time in accordance with the market.
 
 
 17
 Federal law, however, is silent on the issue of prejudgment interest, see 28 U.S.C.A. Sec. 1961(a), whereas Iowa law authorizes interest "from the date of the commencement of the action," Iowa Code Sec. 535.3. In the absence of a federal provision directly on point, we have held that "the award of prejudgment interest ... in a diversity action is determined by referring to the law of the state in which the cause of action arose." Bauer v. Uniroyal Tire Co., 630 F.2d 1287, 1290 (8th Cir.1980); accord Simpson v. Norwesco, Inc., 583 F.2d 1007, 1013 (8th Cir.1978). Accordingly, this portion of the district court's judgment is reversed and remanded for a determination of the prejudgment interest due Weitz under Iowa law.
 
 
 18
 For the foregoing reasons, the judgment of the district court is affirmed in part, and reversed and remanded in part.
 
 
 19
 SWYGERT, Senior Circuit Judge, dissenting in part.
 
 
 20
 I dissent from that portion of the court's decision concerning postjudgment interest. Prior to 1982, the federal judgment interest statute provided for postjudgment interest "at the rate allowed by State law." Act of June 25, 1948, 62 Stat. 957 (formerly codified at 28 U.S.C. Sec. 1961 (1976)). This statute was amended, effective October 1, 1982, to prescribe a federal rate of interest. Federal Courts Improvement Act of 1982, Pub.L. 97-164, Sec. 302(a), 96 Stat. 25, 55-56 (codified at 28 U.S.C.A. Sec. 1961(a) (Supp.1983)).
 
 
 21
 Congress has only limited authority to dictate the law that applies in a federal court sitting in a diversity action. In Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 79, 58 S.Ct. 817, 822, 823, 82 L.Ed. 1188 (1938), the Supreme Court held that "Congress has no power to declare substantive rules of common law applicable in a State .... 'Supervision over either legislative or the judicial action of the States is in no case permissible except as to matters by the Constitution specifically authorized or delegated to the United States.' " Accord Hanna v. Plumer, 380 U.S. 460, 471-72, 85 S.Ct. 1136, 1144-45, 14 L.Ed.2d 8 (1965); Bernhardt v. Polygraphic Co., 350 U.S. 198, 202, 76 S.Ct. 273, 275, 100 L.Ed. 199 (1956). Judgment interest is an item of substantive damages. See generally Restatement (Second) of Conflict of Laws Sec. 171 comment C (1971). It is not clear whether the Constitution grants Congress the "power to declare" the rate of interest due on judgments in diversity cases in which the claims are based entirely upon state law. In any event, if Congress intended to override the authority of the states on this point, it would have done so in more explicit terms than are contained in the new judgment interest statute. Cf. Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 1985-86, 64 L.Ed.2d 659 (1980) (relying upon absence of any indication that federal rule was intended to toll state statutes of limitations or displace state tolling rules in holding that state statute controlled). The new statute maintains the same language as the prior statute except for providing a federal rate of interest, and neither the statute nor the legislative history mention diversity actions despite the long line of cases holding that judgment interest is a matter of substantive law to be determined by the law of the forum state in a diversity action, see, e.g., Jarvis v. Johnson, 668 F.2d 740, 746-47 (3d Cir.1982); Budge v. Post, 643 F.2d 372, 375 (5th Cir.1981); Bauer v. Uniroyal Tire Co., 630 F.2d 1287, 1290 (8th Cir.1980); Casto v. Arkansas-Louisiana Gas Co., 562 F.2d 622, 625 (10th Cir.1977).*
 
 
 22
 In Bernhardt v. Polygraphic, supra, the Supreme Court narrowly construed the United States Arbitration Act to avoid a similar constitutional question. Section 3 of the Act provided that in "any suit or proceeding ... brought in any court of the United States upon an issue referable to arbitration under any agreement in writing for such arbitration, the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...." 9 U.S.C. Sec. 3. State law, on the other hand, permitted revocation of an agreement to arbitrate at any time before an award was made. Respondent contended that federal law governed his motion for a stay of the diversity action in the district court. The Supreme Court stated:
 
 
 23
 If respondent's contention is correct, a constitutional question might be presented. Erie R. Co. v. Tompkins indicated that Congress does not have the constitutional authority to make the law that is applicable to controversies in diversity of citizenship cases.... Our view ... is that Sec. 3 so read, would invade the local law field. We therefore read Sec. 3 narrowly to avoid the issue.
 
 
 24
 350 U.S. at 202, 76 S.Ct. at 275. Accordingly, the Court construed the federal Act to apply only to those transactions listed in the first two sections of the Act: transactions involving commerce and maritime activities. Id. at 201-02, 76 S.Ct. at 275. See also Walker v. Armco Steel Corp., supra, 446 U.S. at 748-53, 100 S.Ct. at 1984-86 (narrowly construing Fed.R.Civ.P. 3 and avoiding constitutional question).
 
 
 25
 I would follow the Supreme Court's lead in Bernhardt, and construe the federal interest statute not to apply in diversity actions such as the one before the court, in which the claims are based solely upon state law. In the absence of a federal provision on point, the award of postjudgment interest "is determined by referring to the law of the state in which the cause of action arose," Bauer v. Uniroyal Tire Co., supra, 630 F.2d at 1290. I would direct the district court to apply Iowa law to determine both the prejudgment and postjudgment interest due Weitz.
 
 
 
 [1]
 The Honorable Luther M. Swygert, United States Senior Circuit Judge for the Seventh Circuit
 
 
 [2]
 Also named as defendants are Western Casualty and Surety Company, which acted as surety on the performance bond for the Luther Park Housing Project, and United States Fidelity and Guaranty Company, suretor of the Stone Crest Project
 
 
 [3]
 See Brief of Appellant at 15
 
 
 [4]
 Section 731.1 states in relevant part:
 Right to join union. It is declared to be the policy of the state of Iowa that no person within its boundaries shall be deprived of the right to work at his chosen occupation for any employer because of membership in, affiliation with, withdrawal or expulsion from, or refusal to join, any labor union, organization, or association, and any contract which contravenes this policy is illegal and void.
 
 
 *
 In these cases, the issue was whether to allow prejudgment interest in diversity actions since the federal statute did not provide for such interest. The courts unanimously held that state law governed the award of prejudgment interest. These cases are distinguishable from the present case insofar as state prejudgment interest laws presumably do not present a direct conflict with the federal statute, which is silent on the award of prejudgment interest, while state laws prescribing state rates of postjudgment interest presumably are in direct conflict with the federal statute, which now prescribes a federal rate of postjudgment interest. Nevertheless, congressional silence on the applicability of the new statute in diversity actions remains significant in light of this line of cases