**DROVERS BANK OF CHICAGO, Appellee,**

v.

**NATIONAL BANK AND TRUST COMPANY OF CHARITON, Appellant.**

**No. 86–2158.**

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1987.

Decided Sept. 18, 1987.

Stephen Meyer, Chariton, Iowa, for appellant.

John F. Lorentzen, Des Moines, Iowa, for appellee.

Before ROSS,* Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

In this diversity action, Drovers Bank of Chicago sued National Bank and Trust Co. of Chariton (NBT) for money allegedly due under a loan-participation agreement between the banks. The parties consented to trial before a magistrate,[1] and stipulated to many of the relevant facts, including the amount of money in dispute.

On amended findings of fact and conclusions of law, the Magistrate ruled that Drovers had proved an oral contract under which NBT owed it $60,801.95, plus interest.[2] NBT argues that the Magistrate erred (1) in ruling that the written agreement did not supplant the oral one, (2) in interpreting the oral contract, and (3) in awarding prejudgment and post-judgment interest. We affirm in large part, but reverse the award of prejudgment interest because the Magistrate also awarded contract interest through the date of judgment, and the prejudgment interest duplicates that recovery.

At the time of the dispute, NBT had lent about $600,000 on a line of credit to Orville Luedtke, and Drovers had lent about $75,000 on top of that as its participation in the line of credit. The participation agreement called for NBT to collect payments from Luedtke on all the loans, and then to pay Drovers its portion. The dispute is over the manner in which Drovers was to be repaid in the event Luedtke fell behind in his payments. The oral contract provides that Drovers must be repaid in full before

---

* The Hon. Donald R. Ross, a Circuit Judge in regular active service when this case was submitted, assumed senior status on June 13, 1987.

1. The Hon. R.E. Longstaff, United States Magistrate for the Southern District of Iowa.

2. The original findings of fact and conclusions of law held NBT liable for $31,259.18, plus interest. The Magistrate had determined that the oral contract would be enforced until the date on which NBT sued the borrower, Orville Luedtke, for default on the loans. But the Magistrate held that after that date the provisions of a separate written agreement between NBT and

Drovers controlled over the oral agreement, and that on that basis NBT was liable for the $31,259.18. On Drovers' motion to amend the judgment, the Magistrate vacated the judgment and entered the amended findings and conclusions at issue here, which held that the oral agreement prevailed over the written one for all purposes—even after Luedtke's default—because neither party intended for the written contract to supersede the oral one, as required under Iowa law. See *Commercial Trust & Savings Bank v. Toy National Bank*, 373 N.W.2d 521, 523 (Iowa App.1985).

NBT could retain any payments from Luedtke; this is a "LIFO" (last-in, first-out) provision. The oral contract makes no reference to how proceeds must be distributed in the event of default. On the other hand, the written contract, which was prepared by Drovers, stated that NBT would hold the note and collateral for the loans "for the pro rata benefit of all participants." *Drovers Bank of Chicago v. National Bank and Trust,* No. 84–263–B, slip op. at 6 (S.D. Iowa July 15, 1986). In addition, NBT argues that a federal banking regulation, 12 C.F.R. § 32.107, requires an interpretation of the oral contract according to which NBT and Drovers would share pro rata in the proceeds of the loans in the event of default.

■ Primarily for the reasons stated by the Magistrate in his Memorandum Opinions, we affirm his holding that the written contract never superseded the oral one and his interpretation of the oral contract. See 8th Cir.R. 14. We add only two comments. First, as the Magistrate noted, Iowa law requires that the parties to an oral contract *intend* that a subsequent written contract substitute for the oral agreement before it actually will. See *Commercial Trust & Savings Bank v. Toy National Bank,* 373 N.W.2d 521, 523 (Iowa App.1985). Whether the parties actually had such an intent is a question of fact, and the Magistrate's resolution of that issue was not clearly erroneous.

Second, NBT makes much of the federal banking regulation, 12 C.F.R. § 32.107, and its effect on how the oral contract should be interpreted. Section 32.107 is part of the regulatory scheme imposing lending limits on national banks; it allows banks to exclude the amount of certain participation loans from the calculation of their ceilings. NBT claims, and there was evidence before the Magistrate, that the participation here was intended to qualify for that exclusion. To qualify, the participation agreement must provide for pro rata sharing of loan proceeds in the event of default, even if it provides for LIFO payouts in the absence of default. *Ibid.* NBT argues that the Magistrate's interpretation of the oral agreement is erroneous because it conflicts with the regulation.

Even if NBT were correct about the effect of the regulation on the interpretation issue, it would not necessarily carry the day. The regulation, and the parties' intent with respect to it, are some evidence of the meaning of the contract. Notwithstanding this evidence, the fact remains that the terms of the oral contract provide for LIFO distribution of loan proceeds, and there was evidence that the parties intended that provision to obtain even in the event of default. Thus there is a sound basis in the record for the Magistrate's interpretation of the contract, and, even if we accepted NBT's claims about the significance of the regulation, that evidence might not compel a contrary interpretation.

■ But we need not go so far in this case, for § 32.107 does not even apply to one of the three loans at issue: the June 1, 1983 loan, which was a renewal of the December 1982 loan of $65,934.83. Section 32.107 became effective on April 14, 1983, and it contained a grace period for loans which, like the June 1 loan, were renewals of loans originally made before April 14, 1983. These loans did not have to come into compliance with § 32.107 until January 1, 1985, long after the complaint in this case was filed. See 12 C.F.R. § 32.7(c); Discussion of Transitional Rules, 48 Fed. Reg. 15,850 (1983), at ¶ 7.c. And the regulation applicable to this loan when it was first made in December 1982 did not require pro rata sharing in event of default; it merely suggested it as a sound banking practice. See 12 C.F.R. § 7.1135 (1983); *cf. Commercial Trust,* 373 N.W.2d at 523–24. Thus, although § 32.107 did apply to the July 5, 1983, and August 31, 1983 loans, which totalled $8,640, that regulation does not carry the evidentiary weight, in the context of this agreement, that NBT contends it carries.

■ Turning to the final issue before us, we agree with NBT that the Magistrate erred in awarding Drovers both contract interest and prejudgment interest until the date of judgment. This amounts to an award of double interest for the period

between the filing of the complaint and entry of judgment; such an award is duplicative, and we will not uphold it unless convinced that the law of Iowa (which is controlling on this point, see *Weitz Co. v. Mo-Kan Carpet, Inc.*, 723 F.2d 1382, 1387 (8th Cir.1983) (per curiam)) permits this result. Even though we usually defer to the district court's interpretation of state law, in this case it appears to us that, according to the language of Iowa Code Ann. § 535.-3,[3] the result is impermissible. The case that Drovers relies on to support the award, *City of Sac City v. Bentsen*, 329 N.W.2d 675 (Iowa App.1982), does not address the issue.

■ NBT also appeals the award of post-judgment interest on that part of its damages made up of contract interest accrued through the date of judgment. We affirm this award. The contract interest here was properly awarded as an element of Drovers' money damages, and post-judgment interest must be awarded on the entire amount of a judgment for money damages. 28 U.S.C. § 1961(a); see *Weitz Co.*, 723 F.2d at 1385–87.

For the foregoing reasons, the judgment is affirmed except for that portion which awards both contract interest and prejudgment interest through the date of judgment. We remand to the Magistrate for the limited purpose of reforming the judgment to provide for the award of $60,-801.95, which was the amount of principal and interest owing on March 28, 1984 (the day the complaint was filed), plus contract interest in the amount of $15.33 per day from March 28, 1984, through August 26, 1986, the date of judgment. (The original judgment, entered on July 15, 1986, was vacated, so that cannot be the date of judgment. *Drovers Bank of Chicago v. National Bank and Trust*, No. 84–263–B, slip op. at 5 (S.D.Iowa Aug. 26, 1986).) Post-judgment interest must be awarded on the entire amount so calculated, from August 26, 1986, until payment.

It is so ordered.

---

**3.** Interest shall be allowed on all money due on judgments … at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment … is rendered, in which case the judgment … shall draw interest at the rate expressed in the contract …. The interest shall accrue from the date of the commencement of the action. Iowa Code Ann. § 535.3.

We note also that while the issue of the interest recoverable through the date of judgment is controlled by state law, the issue of post-judgment interest on the damages awarded (which is also addressed in § 535.3) is a matter of federal law. *Weitz Co.*, 723 F.2d at 1385–87. For this reason interest awarded through judgment is based on the contract rate of interest, and interest awarded on the amount of the judgment is calculated at the federal rate.