763 F.Supp. 1030 (1991)
GERMANIA BANK, Plaintiff,
v.
Carol BREHM, Defendant.
No. 90-191C(1).
United States District Court, E.D. Missouri.
May 3, 1991.
*1031 Marvin Klamen, St. Louis, Mo., for plaintiff.
Robert Hoemke, Lewis, Rice & Fingersh, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff brings this action seeking to recover on a promissory note. The case was tried to the Court sitting without a jury. Having considered the pleadings, the testimony of the witnesses, the exhibits before the Court and the stipulations of the parties, and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff Germania Bank is a banking corporation organized and existing under the laws of the United States and has its principal office in St. Louis, Missouri. The Resolution Trust Corporation has appointed a conservator to act in behalf of the plaintiff and the conservator has authorized this action to proceed in the name of Germania Bank as originally filed prior to the appointment.
2. Defendant Carol Brehm is a resident of Mt. Vernon, Illinois and a citizen of Illinois. Her livelihood derives from oil, gas and real estate investments conducted through Brehm Investment Group.
3. In November 1988, an application for a letter of credit in the amount of $300,000.00 was made to plaintiff by defendant, Jon C. Thomas, R. Hal Dean, Pinellas Place, Inc. d/b/a Pinellas Place Shopping Center, a Missouri corporation, and Pinellas Place Limited, a Missouri limited partnership. When issued, the letter of credit was to be granted as additional security for a promissory note executed by Pinellas Place, Inc. dated August 28, 1984, in the original principal amount of $5,235,000.00, in order to extend the maturity of that note.
4. On August 28, 1984, defendant executed a guaranty of interest on the $5,235,000.00 Pinellas Place note. The guaranty was later renewed when the underlying note was extended, so that the guaranty remained in force at all times relevant to this action.
5. Plaintiff issued the letter of credit, "Irrevocable Letter of Credit No. 107," on November 30, 1988, backed up by a "Demand Reimbursement Promissory Note" of the same date and executed by defendant, Jon C. Thomas, R. Hal Dean, Pinellas Place, Inc. and Pinellas Place Limited.
6. The expiration date of Letter of Credit No. 107 was May 1, 1989.
7. Prior to the issuance of Letter of Credit No. 107, Dennis Buckalew, Vice President and General Manager of Brehm Investment Group, spoke with Stephen J. Schwartz, a Vice President of plaintiff, and expressed defendant's unwillingness to sign the promissory note unless her liability thereunder was limited to $100,000.00. Thereafter, Stephen Schwartz consulted with his superiors at the bank and sent to defendant a letter dated November 29, 1988, containing the following text:
Germania Bank has been negotiating a maturity extension with Pinellas Place, Inc. on their indebtedness to Germania Bank. Said extension is to be from September 1, 1988, to April 1, 1989.
One of the conditions of this extension is that Pinellas Place, Inc. provide a Letter *1032 of Credit for $300,000, payable to Germania Bank if any default exists on any of the terms and conditions of the Extension Documents. Germania Bank has agreed to provide such Letter of Credit to Pinellas Place, Inc. secured by a Promissory Note and the joint and several guarantees of Jon Thomas, R. Hal Dean and Carol Brehm.
Be advised that if the Letter of Credit is drawn under the terms of the Extension Agreements and Letter of Credit, Germania will limit your guarantee to $100,000 plus one third ( 1/3 ) of any interest or expenses accrued on the $300,000 promissory note. Your guarantee on the loan to Pinellas Place, Inc. remains the same as negotiated in August of 1984.
8. In view of the May 1, 1989 expiration date of Letter of Credit No. 107, and at the request of Jon Thomas to further extend the maturity date of the Pinellas Place promissory note, Stephen Schwartz drafted a letter to Jon Thomas dated April 26, 1989 containing the following text:
Enclosed please find a new Promissory Note for the $300,000 Letter of Credit ...
In reviewing the old Letter of Credit and the Promissory Note, we cannot modify any of their terms, therefore, we must write a new Letter of Credit and a new Promissory Note. Please sign and have Carol Brehm and Hal Dean also sign. Timing is a problem because this has to be signed and back to me by Monday, May 1, 1989.
9. Ultimately, instead of using the new Letter of Credit and Promissory Note referred to in Stephen Schwartz' April 26 letter to Jon Thomas, Germania Bank issued an undated "Amendment to Irrevocable Letter of Credit No. 107" purportedly extending its expiration date to May 10, 1989. Germania Bank later issued another undated "Amendment to Irrevocable Letter of Credit No. 107" purportedly extending its expiration date to October 15, 1989.
10. Two undated documents which correspond to the two extensions of the letter of credit and which purport to ratify and confirm the promissory note backing it up bear what appears to be the signature of defendant.
11. The letter of credit remained unfunded until September 5, 1989, when Germania Bank, through Stephen Schwartz, drew upon and funded the $300,000 letter of credit.

Conclusions of Law
The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. No objection has been raised as to venue in this district, which is in accordance with the venue provision of the promissory note that is the focus of this action.
Because it appears to the Court that many of the issues hotly contested in this matter have their origin in a lack of regard for legal formalities and inattention to significant details, the Court begins its examination of the case with a legal dissection of the instruments at issue. Letter of Credit No. 107 provides that it is "subject to the Uniform Customs and Practice of Documentary Credits (1983 Revision)" and "shall be deemed to be made under the laws of the State of Missouri (including §§ 400.3-501 to 400.3-511 of the Revised Statutes of Missouri, as amended), and shall be governed and construed in accordance with the laws of the State of Missouri." Article 5 of the Uniform Commercial Code, as enacted in Missouri, is captioned "Letters of Credit."[1] Under the terminology of Article 5, plaintiff is both the issuer and beneficiary of Letter of Credit No. 107. See § 400.5-103(1)(c) & (d). Defendant and the other applicants for the letter of credit are the customers with regard to the letter of credit. See § 400.5-103(1)(g).
The only express limitation on extension or modification of the letter of credit is its provision that:

*1033 This Letter of Credit sets forth in full our understanding, and such understanding shall not in any way be modified, amended, amplified, or limited by reference to any document, instrument or agreement referred to therein, except only Exhibits A and B hereto and the sight drafts; and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement except as set forth above.

[Emphasis added.] Far from prohibiting modification of the letter of credit, this provision merely explains that a reference in the letter of credit to another document does not incorporate such document by reference or otherwise indicate a modification of the terms of the letter of credit by that other document. A failure to read carefully the text underlined above would, of course, lead, and has led defendant, to the erroneous conclusion that the terms of the letter of credit include a blanket prohibition on amendment.
The "Demand Reimbursement Promissory Note" admittedly signed by defendant contains the following pertinent provisions. The note contains its signatories' promise to pay to plaintiff on demand "the principal sum of Three Hundred Thousand Dollars ... or such lesser amount as shall have from time to time been drawn under that certain Letter of Credit (numbered 107) ... as issued, revised or amended (the `Letter of Credit')[.]" The note itself contains no provision concerning amendments or extensions of the note, and the note does not bear an expiration date. The text of the note provides that it "shall be governed by and construed in accordance with laws of the State of Missouri."
Having set forth this background, the Court will now consider the first of the issues raised by the parties.

Validity of Extensions
Because the letter of credit provided that it expired on May 1, 1989, and the letter of credit was not drawn upon until September 5, 1989, plaintiff has attempted to demonstrate that both the letter of credit and the promissory note were extended by agreement among the parties until beyond September 5, 1989. An undated document captioned "Amendment to Irrevocable Letter of Credit No. 107" was executed by Stephen Schwartz on behalf of plaintiff. The pertinent text of the document reads:
Effective immediately Germania Bank ... as agent for the Beneficiaries as set forth in Germania Bank's ... Irrevocable Letter of Credit No. 107 ... hereby modifies and amends said Letter of Credit No. 107 by extending the expiration date to May 10, 1989.
An identical document purportedly extending the expiration date of the letter of credit to October 15, 1989 was later executed by Stephen Schwartz on behalf of the bank. As proof of the extension of the promissory note, plaintiff offered into evidence two identical documents, purportedly bearing the signature of defendant, which state in pertinent part that "The Promissory Note remains in full force and effect and is hereby ratified and confirmed." Each of these documents is attached to one of the two "Amendment" documents purporting to extend the letter of credit.
Section 400.5-106(2) R.S.Mo. provides that:
Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.
This provision requires the consent of defendant and the other signatories to the note, as well as the consent of plaintiff as beneficiary, in order for the letter of credit to be modified. The Court reiterates its conclusion, discussed above, that no further express limitations on modification of the letter of credit were imposed by its text. As a mixed question of law and fact, then, the Court finds from the evidence before it that the promissory note ratifications were forwarded to defendant for her signature with a copy of the letter of credit amendment appended, and that the context created by these two documents *1034 together is sufficient to infer from her signature on the promissory note ratifications defendant's consent to the extensions of the letter of credit. This conclusion points directly to another issue, that of the validity of the signatures.
First, however, the Court would note that in its view, a valid extension of the letter of credit alone would have been sufficient to extend the liabilities of the signatories of the promissory note. The promissory note itself contains no expiration date and its text indicates its derivative nature, i.e., that it is a promise to pay whatever amounts are drawn under Letter of Credit No. 107 as issued, revised or amended. Even if the Court is correct that the extension of the letter of credit alone is sufficient, defendant's signature on the ratification remains significant, as it is the only proffered indication of defendant's consent to the extension of the letter of credit.

Signature Issue
The promissory note in this case is not a negotiable instrument as that term is defined in § 400.3-104(1) because it does not contain an unconditional promise to pay a sum certain. Article 3 of Missouri's Commercial Code, which governs commercial paper, does not therefore directly govern the signature issue here. Nonetheless the Court is guided by its provision concerning authenticity of signatures, which provides in pertinent part:
(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
(a) the burden of establishing it is on the party claiming under the signature; but
(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become disabled before proof is required.
§ 400.3-307 R.S.Mo. The Court must apply Missouri law on the question, and believes the application of these standards on the signature issue is most appropriate; the document here is an instrument closely analogous to those promissory notes directly within the scope of the statutes governing commercial paper, except for its non-negotiability, and the provision here borrowed from those statutes does not concern negotiation or negotiability.
Under the rule of § 400.3-307, plaintiff bears the burden of persuading the Court that the signature is more likely valid than not, see § 400.1-201(8), but is aided in doing so by the presumption that the signature is valid. In addition to the presumption in plaintiff's favor, the Court believes the weight of the evidence presented is in plaintiff's favor as well. A comparison of the signatures on the ratifications with the admittedly genuine signatures of defendant on her guaranty of the Pinellas Place loan interest, the application for the letter of credit and the original promissory note would support the conclusion that they are genuine. Defendant herself testified that the signatures on the ratifications appeared to be her signature.
Defendant's evidence to support her denial of the signatures' validity was, in the Court's estimation, conspicuously weak. Defendant produced no expert who had examined the signatures for forgery, and had not in fact availed herself of the opportunity to review the original documents before trial. More importantly, all defendant did offer was her testimony to the effect that (1) she had no recollection of signing the ratifications, (2) she is not generally in the habit of signing undated documents or documents containing such scanty reference to other documents and to the "project" which they concern, and (3) she had been unable to find copies of the ratifications in her own files.
Other portions of defendant's testimony significantly weakened the strength of these points, however, by revealing that defendant not infrequently signed documents at the direction of her attorney and other advisor-employees, who did not always explain to her in detail the nature or extent of the obligations she was undertaking thereby. For instance, although defendant testified that she remembered signing the original promissory note, she did so *1035 without first having a clear understanding of the liability created and signed because Dennis Buckalew told her it was necessary to sign. In the same vein, defendant testified that no one had ever explained to her in depth her liability on the Pinellas Place project, that she understood the letter of credit only as "a business obligation," that Jon Thomas made the primary decisions for the group concerning the extension of the letter of credit and dealt with Mr. Buckalew on her behalf concerning those decisions, and that she relied on Mr. Buckalew's advice and would have signed the documents had Mr. Buckalew presented them to her and assured her no risk was involved.
In light of all the evidence, the Court finds that defendant has failed to rebut the presumption that the signatures appearing on the ratifications are genuine and that plaintiff has met its burden of persuading the Court that the signatures are more likely valid than not. The Court therefore makes explicit its finding that the signatures on the ratifications are genuine and its resultant conclusion that defendant gave her consent to both extensions of the letter of credit.

Letter Purportedly Limiting Defendant's Liability
Next the Court considers the effect of the letter to defendant from Stephen Schwartz purporting to limit defendant's liability on the promissory note to $100,000.00 plus 1/3 of any interest or expenses. The Uniform Commercial Code is clear that as a general rule "the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction." § 400.3-119 R.S.Mo. Missouri case law expands this rule outside the strict confines of the UCC:
On reason it would appear that if a note, which qualifies as a negotiable instrument, is vulnerable, as between the original parties, to the terms of other written agreements executed as a part of the same transaction, a non-negotiable instrument would be similarly vulnerable.
Even if the four March 6 documents be viewed in a non-UCC setting, this court, in determining the intent of the parties, considers "the entire instrument, subsidiary agreements between the parties, and external circumstances which cast light on the intent." ... "When there is more than one instrument, as here, we must construe them together ... and contradictions must be harmonized if reasonably possible."
Reese v. First Missouri Bank & Trust Co., 664 S.W.2d 530, 535 (Mo.App.1983) [citations omitted]. The Supreme Court of Missouri has noted that:
It has often been held that a contemporaneous written contract, entered into between the original parties to a note, and connected with the note by direct reference or by necessary implication, may affect the payee's right to recover against the maker, and that the two instruments should be considered together as the entire contract.
Local Acceptance Company v. Kinkade, 361 S.W.2d 830, 833 (Mo.1962).
The November 29, 1988 letter directly refers to the $300,000.00 November 30, 1988 Letter of Credit No. 107 "secured by a Promissory Note and the joint and several guarantees of Jon Thomas, R. Hal Dean and Carol Brehm" and to the larger context of the Pinellas Place financing. The letter is clear as to what documents and transactions it concerns. Furthermore, although the letter does not take the strict form of an agreement signed by both plaintiff and defendant, the evidence made clear that its subject matter was negotiated between plaintiff and representatives of defendant on her behalf. Stephen Schwartz testified that he understood the letter to be effective to limit defendant's liability in accordance with its terms, and that he believed that plaintiff would not have signed the promissory note without such a limitation of liability. Even were the document required to satisfy the statute of frauds, see § 400.2-201 and § 432.010 et seq., it would pass muster because it is a writing sufficient to indicate the nature and substance of the agreement and is signed by the party against whom enforcement is sought. Barring a successful defense *1036 against its operation, then, the Court would hold that the letter memorializes a contemporaneous agreement by plaintiff to limit defendant's liability under the promissory note.
Plaintiff's first argument against the effectiveness of the letter as a limitation of defendant's liability is its use of the word "guarantee" instead of "note." Although the letter, drafted as it was by a bank vice president, may have used legal terminology inexactly, the Court has previously determined that the language of the letter considered as a whole makes overwhelmingly clear to what documents and transactions it refers. Plaintiff cannot escape the clear import of the letter by pointing to picayune errors made therein by its own representative.
Next plaintiff argues that "whatever limitation of liability there may have been favoring Defendant Brehm before May 1, 1989, that limitation no longer existed after May 1, 1989." Plaintiff's Post-Trial Supplement to its Pre-Trial Brief, p. 9. Plaintiff points to the November 29, 1988 letter's statement that the limitation on defendant's liability is premised on the letter of credit being drawn "under the terms of the Extension Agreements and Letter of Credit." Plaintiff's rationale is that "Extension Agreements" refers to those documents extending the underlying Pinellas Place loan maturity to May 1, 1989, and because the letter of credit was not drawn upon under that extension but a subsequent one, any limitation on defendant's liability would by then have lapsed because the November 29 letter's terms were not extended along with the letter of credit and promissory note.
First, the Court would point out plaintiff's own inexactitude in the November 29 letter's designating the Pinellas Place loan extension as to April 1, 1989 rather than May 1, 1989. Second, the Court would note that "Extension Documents" is not defined in the letter and could just as readily be construed generally to mean any and all documents extending the Pinellas Place loan, which would encompass not only the extension to May 1, 1989, but the two subsequent extensions to May 10 and October 15. Finally, construing the letter together with the promissory note itself as a whole contract, the Court would conclude that plaintiff's two-time offer to ratify and extend the promissory note was likewise an offer to ratify and extend the limitation of liability found in the November 29 letter, in conjunction with the extension of the letter of credit, all of which plaintiff accepted and consented to by signing the ratifications. Plaintiff would have it that the November 29 letter required separate and explicit extension of its terms; the Court finds instead that the letter and promissory note together constituted a single agreement derivative of Letter of Credit No. 107, and that when the letter of credit was extended with defendant's consent, so were the terms of the promissory note and November 29.
Plaintiff's last attack on the November 29 letter as a limitation of liability is based on the D'Oench, Duhme doctrine[2] as now codified in 12 U.S.C. § 1823(e). That doctrine limits the use of agreements between depository institutions and third parties to "diminish or defeat the interest of" the Resolution Trust Corporation "in any asset acquired by it." Defendant defeats this argument by correctly noting that § 1823(e) does not apply in the instant case, where the Resolution Trust Corporation has not been appointed the receiver of plaintiff, but instead has appointed a conservator to act on plaintiff's behalf.[3] In the conservatorship situation, the Resolution Trust Corporation has not acquired plaintiff's assets so as to trigger the application of § 1823(e) here to the November 29 letter as an agreement concerning the promissory note.
For similar reasons, the Court deems the rule of D'Oench, Duhme itself, *1037 to the extent it exists separate from § 1823(e), to be inapplicable here. That case was one in which the F.D.I.C. was a named party, having itself acquired the note at issue. Like § 1823, the holding in the case was based largely on the particular public policy concerns implicated when a federal bank insuring authority and its assets are involved. Furthermore, the agreement in derogation of the note in D'Oench, Duhme was not made in so formal a fashion as the November 29 letter, and was not reflected in the bank's own records, as the November 29 letter was.
Finding no merit in plaintiff's attacks on the November 29 letter as a limitation of liability, and further finding that under Missouri law the letter was effective as a limitation of liability, the Court would limit plaintiff's liability under the promissory note in keeping with the terms of that letter. Next, however, the Court must consider defendant's last argument against liability.

Conformity of Draw with Terms of Letter of Credit
Defendant disputes whether she bears any liability under the promissory note by challenging the draw on the letter of credit as failing to comply with the terms governing such a draw. In particular, defendant argues that plaintiff failed to show that its draw upon the letter of credit met the requirements concerning default on the Pinellas Place loan and requests for such a draw by "Participants" holding at least a 50% interest in the loan. The pertinent portion of Letter of Credit No. 107 reads:
Funds drawn under this Letter of Credit are available to Beneficiary against Beneficiary's sight draft(s) drawn on us, stating on their face: "Drawn under Germania Bank ... Irrevocable Letter of Credit No. 107" accompanied by Beneficiary's written certificate signed by an authorized officer, appropriately completed, in the form of Exhibit A hereto, and setting forth that Pinellas is in default in the payment of one or more installments of principal and/or interest under the Note and such default has continued for thirty (30) days or more, certifying as to the aggregate amount of principal and/or interest as to the payment of which Pinellas is so in default, and further certifying that such Beneficiary has received written requests for such a draw from Participants holding at least fifty percent (50%) in interest under the Note and Mortgage....
Once again, a careful attention to the detail of this excerpted text reveals plaintiff's compliance therewith.
Defendant is mistaken when she asserts that "the sole evidence offered was that Germania Bank, through Mr. Schwartz, decided to draw upon the letter of credit." Defendant's Post-Trial Brief, p. 8. The copy of the original Letter of Credit No. 107, submitted into evidence, has appended to it the completed Exhibit A referred to in the above excerpt: a completed "Certificate for a `Drawing'" dated September 5, 1989 and signed by Stephen Schwartz as a Vice President of plaintiff. This certificate, in accordance with the above-excerpted terms of the letter of credit:
(1) is signed by an authorized officer of plaintiff;
(2) is appropriately completed in the form of Exhibit A to the letter of credit;
(3) sets forth that Pinellas was in default in the payment of one or more installments of principal and/or interest under the Note and that such default had continued for thirty (30) days or more;
(4) certifies as to the aggregate amount of principal and/or interest ($5,049,983.36) as to the payment of which Pinellas was in default; and
(5) further certifies that Participants holding at least fifty percent (50%) in interest under the Note and Mortgage had requested that plaintiff make a draw under the letter of credit.
Particularly because defendant has challenged not the existence of the facts underlying these certifications but whether plaintiff has met its burden of proof as to those facts, the Court rejects defendant's argument. The "appropriately completed" Exhibit A satisfies those requirements of the *1038 letter of credit as to which defendant has challenged plaintiff's proof.

Interest and Attorney's Fees
The promissory note includes the makers' promise "to pay interest on the unpaid balance of such principal sum [as is drawn under the letter] at the rate set forth below, until the payment of such principal sum has been made in full" and provides that "[i]nterest with respect to the outstanding principal amount hereunder shall accrue from the date of the drawing under the Letter of Credit until payment in full." The interest rate set out later in the text is a variable annual rate equal to plaintiff's prime rate plus 7%. The note also includes the makers' promise to pay the reasonable attorney's fees and expenses incurred for collection on the note. The November 29, 1988 letter, in addition to limiting defendant's liability for principal to $100,000, also limits her liability for "interest or expenses accrued on the $300,000 promissory note" to one-third of the total. The Court construes "expenses" to include the attorney's fees and expenses for which the makers collectively are liable under the terms of the note itself, because those are the only other costs, in addition to principal and interest, that are referred to in the note.
As to contract interest based on the terms of the note, the Court has not been provided with the necessary data to compute the interest owed. The judgment entered will therefore include interest formulated generically, leaving it to the parties to correctly compute the dollar amount in accordance with the Court's judgment and this memorandum. The Court concludes from the foregoing that defendant is liable for contract interest in the amount of one-third of the interest that has accrued on the total unpaid $300,000 from September 5, 1989 through the date of the judgment entered herewith, to be calculated at the rate set forth in the terms of the promissory note.
Attorney's fees present a thornier problem. Plaintiff seeks an award of the entire amount of its attorney's fees and expenses against defendant, arguing that such an award is appropriate because she assumed joint and several liability for attorney's fees and expenses. Defendant would, of course, prefer a judgment entirely in her favor, but has argued that any judgment against her for attorney's fees and expenses should be in an apportioned amount, i.e., should be the total of only those fees and expenses incurred by plaintiff in its efforts directed at her, and not those incurred in plaintiff's separate efforts to collect from Jon Thomas and R. Hal Dean.
The Court's determination of the other issues in this case provides direction in its determination of the attorney's fees issue. The Court has found the November 29, 1988 letter to be a contemporaneous agreement validly limiting defendant's liability under the note. As noted above, that letter provides that "Germania will limit your guarantee to $100,000 plus one third ( 1/3 ) of any interest or expenses accrued on the $300,000 promissory note." Because the Court has determined that "expenses" refers to attorney's fees and expenses, the attorney's fees issue is a question of contract construction, rather than a question committed largely to the Court's discretion.
If unchanged by the November 29 letter, defendant's obligation under the note for attorney's fees and expenses would be joint and several, so that defendant would be liable for the entire amount of fees and expenses incurred in attempts at collection on the note, whether directed at her or the other signatories.[4] The November 29 letter, however, overrides the presumption and limits plaintiff's liability in accordance with its terms. The Court believes that the plain meaning and therefore clear construction of the words of the November 29 letter *1039 indicates that defendant is liable for one-third of the total attorney's fees and expenses plaintiff has incurred with respect to collection on the promissory note. Rather than apportion defendant's liability for fees and expenses based on which signatory they concerned, the Court must, in effect, apportion fees and expenses on a strictly mathematical basis.
Defendant also argues, aside from issues of apportionment, that any award of plaintiff's attorney's fees must be reduced to limit it to only those fees reasonably incurred, and that a certain portion of the fees were unreasonably incurred as a result of plaintiff's "shoddy documentation" and plaintiff's decision to pursue the signatories in separate actions and courts. Plaintiff's argument concerning documentation focuses on the fact that plaintiff used the amendments and ratifications to extend the letter of credit rather than an entirely new letter of credit and promissory note; because the Court has determined that the letter of credit, and derivatively the promissory note, were effectively extended by the amendments and ratifications, the Court rejects this argument. As to plaintiff's filing separate actions in different courts, plaintiff's decision in this regard does not appear to the Court to be unreasonable under all the circumstances surrounding the decision, and the Court rejects the argument that fees and expenses should be reduced on that basis.
Plaintiff's counsel has submitted documentation substantiating a total of $74,045.60 in attorney's fees and $1,120.44 in expenses incurred since December 1989 in attempts to recover on the promissory note. Under the terms of the November 28 letter, defendant is liable for one-third of each of these totals, or $24,681.87 in fees and $373.48 in expenses. The Court therefore includes those totals in the judgment entered herewith.
Defendant is also liable to defendant for such postjudgment interest as is allowed by law, to be calculated from the date of judgment as accruing on the total amount of the judgment, i.e., on the total of $100,000 plus the contract interest and attorney's fees and expenses awarded. See Drovers Bank of Chicago v. National Bank and Trust Co. of Chariton, 829 F.2d 20 (8th Cir.1987) [plaintiff entitled to postjudgment interest on that part of damages made up of contract interest accrued through date of judgment]; R.W.T. v. Dalton, 712 F.2d 1225 (8th Cir.1983) [attorney's fees an item of damages like any other as to which postjudgment interest accrues].

Conclusion
On the basis of the findings of fact and conclusions of law set forth in this memorandum, the Court this day enters judgment in favor of plaintiff and against defendant in the amount of $100,000.00 plus interest and attorney's fees in the amounts indicated above.
NOTES
[1] § 400.5-102(4) R.S.Mo. would preclude the application of § 400.5 to the letter of credit here because the letter of credit's terms expressly make it subject to the uniform customs and practice for commercial documentary credits, except that the letter of credit also expressly provides that it is to be governed and construed in accordance with Missouri law.
[2] So named based on D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).
[3] In fact, plaintiff represents to the Court that the conservator has authorized this action to proceed in plaintiff's own name.
[4] This is so even in the absence of explicit "joint and several" language in the provision concerning attorney's fees and expenses. Under common law, where two or more persons undertake an obligation, the presumption is that the undertaking is joint. See e.g. Don L. Tullis & Associates, Inc. v. Gover, 577 S.W.2d 891, 900 (Mo.App. 1979). Furthermore, § 431.110 R.S.Mo. provides that a contract that is joint under the common law is to be construed to be joint and several.