**WORLD SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Zbigniew JAKUBIEC, et al., Defendants.**

No. 91 C 4067.

United States District Court, N.D. Illinois, E.D.

June 16, 1992.

Alan Mills, Sp. Com'r, Chicago, Ill., for plaintiff.

Barry Fisher, Fisher & Fisher, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This mortgage foreclosure action was brought in this District Court by the invocation of diversity-of-citizenship jurisdiction by mortgagee World Savings and Loan Association ("World Savings").[1] As always in

---

1. All of the substantial volume of such actions that are filed in this District Court find their way here on the same basis, save only those to which the United States or one of its agencies is a party in a manner that confers federal question jurisdiction.

these cases, this Court appointed its own special commissioner (in the recent past Alan Mills, Esquire ("Mills") has been its regular appointee) to conduct the foreclosure sale.

Everything proceeded in the regular course here, with a judgment of foreclosure being entered and Special Commissioner Mills then conducting a sale by public auction. This Court approved the report of sale by its May 1, 1992 order. Now Special Commissioner Mills has filed a request for direction on two subjects:

1. the proper rate of interest to be used in calculating the postjudgment interest to which World Savings is entitled; and

2. the distribution of the portion of the proceeds of sale in excess of the amount due to the mortgagee.

This opinion treats with each of those questions.

### Postjudgment Interest Rate

■ Paragraph 9 of this Court's November 15, 1991 judgment in foreclosure provided (as the law would in any event) that World Savings was entitled as part of its relief to "interest ... at the statutory rate after the entry of this judgment...." As is always true in these foreclosure actions, the form of judgment order had been prepared by World Saving's counsel and tendered by them to this Court for its consideration and entry. And as can be seen from the quoted language, the source of the "statutory rate" was unspecified.

Until 1982 the relevant statute (28 U.S.C. § 1961, "Section 1961") required postjudgment interest on every federal district court civil money judgment and specified:

Such interest shall be calculated from the date of entry of the judgment at the rate allowed by State law.

But effective October 1, 1982 Section 1961 was expanded by a division into subsections, with the just-quoted language being replaced by the following provision in what had become Section 1961(a):

Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price of the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

No change was made, however, in the universality of the retained first sentence:

Interest shall be allowed on any money judgment in a civil case recovered in the lower district court.

Market interest rates have tumbled recently, so that the new statutory floating rate has currently driven the federal rate below 5%. By contrast, the state law postjudgment rate is set by statute (something that necessarily precludes frequent changes, given the combined factors of time lag and outright inertia), so that the current rate is a much higher 9% annually (Ill.Rev.Stat. ch. 110, ¶ 2–1303). Not surprisingly, World Savings' counsel is now urging that it is entitled to payment at the higher state law rate because this action is grounded in diversity. Hence Special Commissioner Mills, who takes Section 1961(a) literally, has sought instructions here.[2]

Our Court of Appeals has not had occasion to deal with the question. But in light of the unequivocal universality of Section 1961(a), which creates no distinction between civil cases brought under the diversity head of jurisdiction and those filed in district courts because of the presence of federal questions, it should not be surprising that every Court of Appeals that has dealt with the issue has ruled that the Treasury bills rate specified in the 1982 amendment to Section 1961(a) controls: *Mobil Exploration & Producing North America, Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 509 (8th Cir.1990), reconfirming *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Knudsen*, 749 F.2d 496, 497 (8th Cir.1984) and earlier cases; *Nissho–*

---

**2.** This difference of view, and the Special Commissioner's independence in asserting his position, have again reconfirmed the desirability of the Court's appointment of its own designee (rather than those suggested by counsel for mortgagees) to serve in the special commissioner role.

*Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 622 (5th Cir.1988); *Everaard v. Hartford Accident & Indemnity Co.,* 842 F.2d 1186, 1193–94 (10th Cir.1988); *Roy Stone Transfer Corp. v. Budd Co.,* 796 F.2d 720, 723 n. 6 (4th Cir.1986); *G.M. Brod & Co. v. U.S. Home Corp.,* 759 F.2d 1526, 1542 (11th Cir.1985).[3]

Only this Court's colleague Honorable Ilana Rovner has stood apart on this issue (*Lazzara v. Esser,* 622 F.Supp. 48, 49–51 (N.D.Ill.1985)), relying for her different conclusion on a dissent by the late Senior Circuit Judge Luther Swygert of our Court of Appeals (sitting by designation in an earlier Eighth Circuit case, *Weitz Co. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1387–88 (8th Cir.1983)). This Court has always had the greatest respect for former Chief Judge Swygert and of course for Judge Rovner as well. But it is constrained to part company with them in the face of such an unambiguous statute as Section 1961(a) and such an unbroken array of appellate decisions. This District Court's now Chief Judge James Moran has also opted to follow the plain statutory meaning and the rulings of the Courts of Appeals that have made the same determination (there were fewer of those at the time that Judge Moran ruled in *Commonwealth Edison Co. v. Decker Coal Co.,* 653 F.Supp. 841, 845 (N.D.Ill.1987)).

Accordingly this Court instructs Special Commissioner Mills that he is correct in his application of the Treasury bills rate, rather than the Illinois 9% statutory rate, to calculate postjudgment interest in determining the distribution of proceeds of sale. This Court's approval of the report of sale is reconfirmed.

### Excess Proceeds

Unlike the most frequent situation in which the mortgagee itself bids in on the property at the foreclosure sale (an event that normally produces a bid that generates neither a deficiency nor a surplus), in this instance an unrelated purchaser bid $130,000 for the property. With postjudgment interest being calculated at the rate approved by this opinion, the total amount due to World Savings plus the $200 in special commissioner's fees aggregated $122,866.32, leaving surplus proceeds of $7,133.68.

In response to Special Commissioner Mills' request for instructions as to the disposition of those proceeds, this Court finds that he should be compensated for his services in bringing his current requests for direction. This Court will determine the appropriate amount in that respect promptly upon Special Commissioner Mills' providing the necessary information as to (1) the time that he has spent on the matter and (2) his normal hourly rate. All excess proceeds are of course payable to the mortgagors if their whereabouts are known to Special Commissioner Mills. If that is not the case and if no claim has been presented by the mortgagors to him on or before August 15, 1992, Special Commissioner Mills shall forthwith pay the remaining excess funds to the Clerk of this United States District Court, subject to withdrawal thereafter by the mortgagors or, absent such withdrawal, subject to the provisions of 28 U.S.C. § 2042.

---

3. In *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1522 (9th Cir.1985) the court rejected the lower court's award of interest at the prime rate in response to defendant's argument that such an award was erroneous. Instead the Court of Appeals cited one of its own 1975 (!) opinions— one antedating the relevant statutory change by fully seven years—for this proposition:

In diversity cases, state law governs the award of prejudgment and postjudgment interest.

It does not appear that either the litigants or the court even focused on the change in law in that case, so this Court concludes that Circuit Judge Choy must have nodded. As Horace's *Ars Poetica* says at line 402:

Homer himself hath been observ'd to nod.