987 F.2d 1017
 61 USLW 2508, 16 Employee Benefits Cas. 2625
 Robert E. QUESINBERRY, individually and as Administrator of
the Estate of Karen S. Quesinberry, deceased,
Plaintiff-Appellee,
v.
LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant,
and
Citibank Individual Banking Group Accident Plan, Defendant.
Robert E. QUESINBERRY, individually and as Administrator of
the Estate of Karen S. Quesinberry, deceased,
Plaintiff-Appellant,
v.
LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee,
and
Citibank Individual Banking Group Accident Plan, Defendant.
 Nos. 92-1100, 92-1166.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1992.
Decided Feb. 12, 1993.
 
 William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, VA, argued (Melissa W. Scoggins, C. Coleman, G. Edmunds, on brief), for defendant-appellant.
 Thomas Daniel Frith, III, Mundy, Rogers & Frith, Roanoke, VA, argued for plaintiff-appellee.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE,* WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges, sitting en banc.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 Mr. Robert E. Quesinberry brought this action to collect proceeds as a beneficiary of an accidental death insurance policy purchased by his wife, Mrs. Karen S. Quesinberry, from Life Insurance Company of North America (LINA) through her employer. The district court awarded Mr. Quesinberry $82,500, the principal amount of the policy, as well as pre- and post-judgment interest. On appeal, LINA challenges the district court's consideration of evidence that was not part of the record before the plan administrator as well as the judgment for Mr. Quesinberry. Mr. Quesinberry cross-appeals the district court's denial of attorneys' fees and challenges the manner in which the district court awarded post-judgment interest.
 
 
 2
 This appeal presents three issues regarding the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1988). The first issue concerns the scope of the district court's de novo review in denial of benefits cases, specifically whether the district court may consider evidence that was not presented to the plan administrator. The second issue concerns the district court's application of the test adopted by this court in Adkins v. Reliance Standard Life Insurance Co., 917 F.2d 794 (4th Cir.1990), for determining whether injuries or losses are accidental where there may be a preexisting infirmity or susceptibility. The third issue is the appropriate legal standard for an award of attorneys' fees in an ERISA action. In addition to the ERISA issues, we must determine whether prejudgment interest should be included as part of the judgment when calculating post-judgment interest.
 
 
 3
 For the reasons set forth below, we conclude that the district court employed the correct scope of review, that it did not err in finding for Mr. Quesinberry, and that attorneys' fees were properly denied. We also conclude, however, that the district court should have awarded post-judgment interest on the entire amount of the judgment, including the assessment of pre-judgment interest. Accordingly, we affirm in part, reverse in part, and remand.
 
 I. Background
 
 4
 Mrs. Quesinberry was admitted to Roanoke Memorial Hospital, Roanoke, Virginia, on June 16, 1983, with a preliminary diagnosis of optic neuritis and multiple sclerosis. At the time of her hospitalization, Mrs. Quesinberry reported the following symptoms: dizziness, back pain, decreased rectal and bladder sensation, diminished visual acuity, and numbness in her hand. Mrs. Quesinberry's doctors scheduled her for a computerized tomography scan (CT scan) in order to verify their preliminary diagnosis. In preparation for the CT scan, Mrs. Quesinberry was given 300 cc's of Renografin 60, a contrast material administered to aid in interpreting the results of the CT scan. Within fifteen minutes of receiving the Renografin injection, Mrs. Quesinberry experienced uncontrollable muscle spasms. She later suffered several cardiac arrests, malignant hypothermia, and whole body tremors, and she eventually became comatose. Mrs. Quesinberry remained comatose until her death on June 19, 1983. The autopsy performed on Mrs. Quesinberry revealed that she had neurosarcoidosis with extensive involvement of the brain and central nervous system.[1]
 
 
 5
 As the beneficiary of his wife's accidental death insurance policy, Mr. Quesinberry filed a proof of loss and claim for benefits. LINA denied his claim for benefits and his administrative appeal. Mr. Quesinberry filed this action asserting that his wife suffered an accidental death as a result of a toxic reaction to the injection of Renografin and that he was wrongfully denied the proceeds of the insurance policy.[2] Prior to trial, the district court determined that the de novo standard of review adopted by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), applied to the case and that under the de novo standard Mr. Quesinberry should be permitted to present all admissible evidence, including evidence that was not previously presented to the plan administrator, 737 F.Supp. 38.
 
 
 6
 At the bench trial, Mr. Quesinberry's experts opined that the Renografin reduced the level of calcium in Mrs. Quesinberry's blood to such a degree that it caused her muscle spasms and cardiac arrest, which in turn caused damage to the hypothalamus, resulting in the malignant hypothermia. According to Mr. Quesinberry's theory, the Renografin injection started a process that ultimately caused Mrs. Quesinberry's death, unrelated to the sarcoidosis.
 
 
 7
 LINA argued that Mrs. Quesinberry's sarcoidosis, in combination with the injection of Renografin, played a significant role in causing her death. The medical experts for LINA testified that the sarcoidosis caused the Renografin to breach the blood-brain barrier, which led to Mrs. Quesinberry's toxic reaction to the drug. As support for its position, LINA's medical experts testified that a toxic reaction to Renografin would not typically produce the symptoms experienced by Mrs. Quesinberry.
 
 
 8
 The parties agreed that the appropriate rule for determining whether Mr. Quesinberry should recover under his wife's accidental death insurance policy was the Reliance Standard test for determining whether a pre-existing illness or predisposition defeats accidental injury or death coverage. Reliance Standard, 917 F.2d at 797. Applying this test, the district court found that, under either version of the facts, Mrs. Quesinberry had a predisposition or susceptibility that contributed to her death. The district court then held that the injection of the dye and the resulting consequences was an accident within the meaning of the policy and that Mr. Quesinberry was entitled to recover the $82,500 in insurance proceeds.
 
 
 9
 The district court subsequently addressed Mr. Quesinberry's request for attorneys' fees, pre-judgment interest, and post-judgment interest. The district court noted that an award of attorneys' fees under ERISA was discretionary. Applying the five factor test outlined in Reinking v. Philadelphia American Life Insurance Co., 910 F.2d 1210, 1217-18 (4th Cir.1990), the court denied Mr. Quesinberry's request for attorneys' fees.
 
 
 10
 The district court also held that Mr. Quesinberry was entitled to pre-judgment interest on the $82,500 principal amount of the insurance policy to compensate him for the loss of use of his funds. With the pre-judgment interest, Mr. Quesinberry's total recovery was $147,885.21. The court awarded post-judgment interest, but only on the principal amount of $82,500.
 
 II. Scope of Review
 
 11
 In Firestone, the Supreme Court decided that a district court should review de novo a plan administrator's denials of benefits under § 1132(a)(1)(B) of ERISA, unless the benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956. Prior to the Firestone decision, the review in ERISA cases in this Circuit, as well as other Circuits, was limited to determining whether the benefit denial was arbitrary and capricious. Id. at 107, 109 S.Ct. at 952 (citing Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134, 138 (3rd Cir.1987)); Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 (4th Cir.1985). While it is clear that Firestone changed the standard of review for non-discretionary plans from arbitrary and capricious to de novo, it is not clear how this change in review standards affects the scope of evidence which the district court can consider in conducting a de novo review.
 
 
 12
 Other courts addressing the scope of de novo review under ERISA have correctly pointed out that de novo review can refer "both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court." Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir.1990) (citing 2 S. Childress & M. Davis, Standards of Review § 15.2 (1986)). ERISA does not specify either a standard of review or the scope of that review. LINA argues that in adopting a de novo standard of review the Supreme Court intended that district courts conduct a de novo review of the plan administrator's decision, limited to the evidence which was before the plan administrator. Mr. Quesinberry argues that the Supreme Court intended a full and unrestricted de novo hearing, and therefore the district court properly allowed evidence which was not before the plan administrator.
 
 
 13
 In Firestone the Supreme Court resolved the standard of review question by looking to the Congressional purposes of ERISA and the applicable standards of review prior to ERISA. We will take a similar approach in this case. In determining the appropriate scope of review we will first review the principles that guided the Supreme Court in Firestone. After reviewing Firestone, we will look in detail at the opinions by other circuits addressing this issue and the purposes of ERISA which directed their conclusions. Gleaning guiding principles from both Firestone and the other circuits which have addressed this issue, we will then formulate a limited discretionary scope of review which we believe is most consistent with the multiple purposes of ERISA.[3]
 
 
 14
 In adopting the de novo standard of review, the Supreme Court emphasized that the de novo standard is used under trust law, and that ERISA is replete with the language and terminology of trust law. Firestone, 489 U.S. at 110-12, 109 S.Ct. at 954-55. The court also found the de novo standard most consistent with the judicial treatment of benefit plans prior to ERISA, which was governed by contract law. Id. at 112, 109 S.Ct. at 955. The Court stressed ERISA's purposes of " 'promote[ing] the interests of employees and their beneficiaries in employee benefit plans' " and " 'protect[ing] contractually defined benefits.' " Id. at 113, 109 S.Ct. at 955 (quoting, respectively, Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985)).
 
 
 15
 The Supreme Court specifically rejected arguments opposing the de novo standard of review on the ground that it would result in much higher administrative and litigation costs, stating that the "threat of increased litigation is not sufficient to outweigh the reasons for a de novo standard." Id. 489 U.S. at 115, 109 S.Ct. at 956. The Court ultimately concluded that "the de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." Id.
 
 
 16
 In Berry v. Ciba-Geigy Corp., we were presented with the exact issue presented here, the proper scope of review in an ERISA case, but we addressed the issue under the arbitrary and capricious standard of review. 761 F.2d at 1006. Applying that standard of review, we held that the trial court improperly admitted evidence which was not before the plan administrator. Id. at 1007. In so doing, we stated that if the court believed the administrator lacked adequate evidence, the proper course was to remand to the trustees for a new determination and not to bring additional evidence before the district court. Id. We were particularly concerned with preventing the transfer of the administration of benefit and pension plans from their designated fiduciaries to the federal courts. As we noted, "such a substitution of authority is plainly what the formulated standards of ERISA are intended to prevent." Id.
 
 
 17
 Another purpose of ERISA which influenced our conclusion in Berry on this issue was the fact that ERISA was designed to "promote 'internal resolution of claims,' " and to permit " 'broad managerial discretion' on the part of pension plan trustees in formulating claims procedures, and to encourage informal and non-adversarial proceedings." Id. n. 4 (citing Grossmuller v. International Union, UAW Local 813, 715 F.2d 853, 857 (3rd Cir.1983)). Our focus in Berry on the importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings continues to guide us in determining the appropriate scope of review under a de novo standard.
 
 
 18
 Several circuits have addressed the proper scope of de novo review under ERISA with differing conclusions. We discuss the other circuits' opinions in detail because we will use the divergent views expressed therein, and the purposes of ERISA which directed their conclusions, as a guide for our own holding on this complex issue.
 
 
 19
 LINA urges us to reverse the district court and to follow the approach taken by the Sixth Circuit in Perry v. Simplicity Engineering. Perry involved a challenge to the plan administrator's determination that Perry was not entitled to benefits because he was not totally disabled while he was covered under the plan. Id. at 964. The Perry court held that the de novo review required by Firestone is "a de novo review of the record before the administrator or fiduciary." Id. at 966. Therefore, the court simply applied the pre-Firestone scope of review articulated in Crews v. Central States, Southeast & Southwest Area Pension Fund, 788 F.2d 332 (6th Cir.1986), and strictly limited the scope of the district court's review to the evidence that was presented to the plan administrator or trustee.[4] Perry, 900 F.2d at 966.
 
 
 20
 The court stated that allowing a de novo hearing, rather than just a de novo determination of whether the administrator or fiduciary made a correct decision, would frustrate ERISA's goal of prompt claim resolution. Id. The Perry court pointed out that "[a] primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously"; therefore, allowing district courts to hear evidence that was not presented to the administrator would be adverse to the interests of employees and their beneficiaries. Id. at 967. Adopting the Perry court's approach would mean continuing to apply the scope of evidentiary review we articulated under the arbitrary and capricious standard in Berry.
 
 
 21
 LINA also directs us to a recent Eighth Circuit case, Davidson v. Prudential Insurance Co., 953 F.2d 1093 (8th Cir.1992), upholding the rejection of evidence which was not before the plan administrator. Davidson challenged the determination that he was not disabled for purposes of the plan's long term disability benefits. Id. at 1094. The Eighth Circuit found that Davidson was simply attempting to reopen the record to submit additional, more favorable evidence, developed after litigation had begun, than the evidence he had presented to the plan administrator. Id. at 1095. According to the court, Davidson should have known about this evidence and if he believed consideration of it was necessary to make a correct determination, he should have presented it to the administrator. Id. In light of these facts, the court rejected Davidson's contention that the district court abused its discretion in refusing either to allow this evidence to be considered or to remand the case to the plan administrator for supplementation of the evidence. Id. The Eighth Circuit specifically stated that in these circumstances, it "need not decide whether a district court conducting a de novo review of an ERISA plan administrator's benefits determination may consider evidence that was not part of the administrative record, or alternatively, direct the administrator to develop the record further." Id.
 
 
 22
 Mr. Quesinberry, on the other hand, argues that both the rationale of the Supreme Court in Firestone, as well as the decisions of other circuits, support the district court's review of evidence that was not before the plan administrator. Mr. Quesinberry contends that the principles of trust law relied on in Firestone support admission of evidence that was not before the administrator, because in trust cases prior to ERISA any evidence was admissible. Mr. Quesinberry also relies on Firestone's concern that employees have as much protection under ERISA as they would have had prior to its enactment. Claims for pension and insurance benefits were previously brought under trust and contract law, and employees were not limited at trial simply to a review of the evidence presented to the trustee or insurance company. Therefore, according to Mr. Quesinberry, restricting the evidence that can be admitted in ERISA cases arguably provides employees and beneficiaries less protection than existed prior to ERISA.
 
 
 23
 Furthermore, Mr. Quesinberry argues that the reasoning of the Second, Third, and Eleventh Circuits better effectuates the policies outlined in Firestone. For example, the Eleventh Circuit rejected an argument similar to Perry in Moon v. American Assurance Co., 888 F.2d 86, 87 (11th Cir.1989). In Moon, Ms. Moon sought benefits under a group travel accident insurance policy after her husband, a vice-president with Day Realty, was killed in an airplane crash. Id. at 87. The insurance company denied benefits on the grounds that Mr. Moon was not an officer of the company and that he was not on a business trip at the time of the crash. Id. The insurance company argued that "a de novo review must examine only such facts as were available to the plan administrator at the time of the benefits denial." Id. at 89. The Eleventh Circuit rejected this argument because restricting the amount of evidence a beneficiary may present at trial would afford less protection to ERISA insureds and their beneficiaries than they enjoyed prior to ERISA's enactment, since prior to that date there was no such limitation. Id.
 
 
 24
 The Second Circuit in Masella v. Blue Cross & Blue Shield, Inc., 936 F.2d 98, 104 (2d Cir.1991), recognized the conflict between Perry and Moon, but found it unnecessary to resolve. In particular, the court found it did not have to decide whether the Perry court was correct that de novo review in ERISA cases should be limited to the evidence before the administrator. Instead, the Masella court held that the evidence at issue in that case, expert testimony regarding whether temporomandibular joint dysfunction (TMJ) was medical or dental in nature, was admissible because it related to the proper interpretation of the terms of the plan. Id. The court distinguished evidence regarding interpretation of plan terms, which would be admissible, from evidence regarding historical facts, such as when the claimant became totally disabled in Perry, which might not be admissible.[5] Id.
 
 
 25
 According to the Masella court, admitting evidence regarding the interpretation of the plan would not mean the courts would become "substitute plan administrators," as the Perry court feared. Id. The reason such a fear was not warranted was because the only time de novo review is appropriate under Firestone is when the plan administrator does not have the discretion to interpret the plan terms. Id. In addition, the district court had already observed in Masella that "no real appellate claim record" existed. Id. In concluding that no unfairness to Blue Cross resulted from the district court's admission of expert testimony, the Masella court stated:
 
 
 26
 [R]equiring the claimant to support at the administrative level a disputed plan interpretation with evidence from experts would impose an unduly heavy burden, particularly when the administrator, like Blue Cross, already has superior access to the relevant expertise.
 
 
 27
 Id. at 105.
 
 
 28
 In Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1184-85 (3d Cir.1991), the Third Circuit held that "a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's administrator." The primary factual issue for resolution in Luby was which one of two beneficiaries should recover death benefits when there were two beneficiary cards on file. Id. at 1179. The district court examined numerous documents signed by the decedent that were not before the plan administrator in order to determine whether the signature on the most recent beneficiary card was authentic. Id. at 1184.
 
 
 29
 According to the Luby court, Perry's limitation on the review of ERISA benefit decisions to the evidence before the administrator "makes little sense ... when a plan administrator's decision is reviewed de novo." Id. The court concluded that such a limitation "is 'contrary to the concept of de novo review.' " Id. (quoting Moon, 888 F.2d at 89). The Third Circuit clarified, however, that a district court was not required to conduct a de novo evidentiary hearing or full de novo trial when it made its determination. Id. at 1185. If the record was sufficiently developed, then the district court could simply make its own de novo benefit determination. Id. In Luby, however, where there was no evidentiary record to review because the administrator did not look at the authenticity of signatures as part of its claims decision, review of such evidence was crucial to the court's determination of the relevant factual issues. Id.
 
 
 30
 All of these cases, including our pre-Firestone decision in Berry, focus on distinct but legitimate purposes of ERISA. Luby discussed the need of promoting the interests of employees and their beneficiaries. 944 F.2d at 1183-84. The court in Moon expressed the concern that ERISA not be interpreted in a manner that would afford employees and beneficiaries less protection under its provisions than they had before ERISA's enactment. 888 F.2d at 89. Perry and Berry, however, focus on the goal of providing prompt resolution of claims and the concern that district courts should not be made into substitute plan administrators. Perry, 900 F.2d at 966; Berry, 761 F.2d at 1007.
 
 
 31
 Unlike the court in Perry, we believe the change in the standard of review occasioned by Firestone changes the scope of evidence which the district court must review. Nevertheless, we continue to believe that the purposes of ERISA described in our Berry opinion warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator. In our view, the most desirable approach to the proper scope of de novo review under ERISA is one which balances these multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator or trustee at the time of the determination.[6]
 
 
 32
 A limited discretionary approach is particularly appropriate because of the variety of ERISA cases which are brought to the federal courts. Some ERISA plans provide for extensive administrative procedures and include lengthy records when appealed to the district court. Other ERISA plans have limited administrative procedures and come to the district court with very meager records. In some ERISA cases the payor and administrator are the same entity, such as this case which involves a claim for insurance benefits under the plan administered by the insurance company. In other ERISA cases they are not the same entity, as where the payor is the pension fund and the administrator is the employer. Some ERISA cases involve complex medical issues crucial to the interpretation and application of plan terms, while others involve limited determinations of historical fact. Because the district court may be presented with so many different types of ERISA cases, some flexibility is necessary in determining whether additional evidence should or should not be allowed. The multiple purposes of ERISA, as well as the variety of claims that may be brought under the statute, support a limited discretionary standard for the scope of evidentiary review.
 
 
 33
 The decisions of the other circuits discussed above provide helpful illustrations of the appropriate exercise of this discretionary scope of de novo review. In Davidson, for example, the plan administrator reviewed the denial of long term disability benefits at least three times, there was an extensive record including five doctors' reports, and the sole issue before the court was whether Davidson was able to engage in any gainful employment. 953 F.2d at 1094-95. In these circumstances, the Davidson court held that the district court did not abuse its discretion in refusing to consider a vocational report that was never presented before the plan administrator. Id. at 1095. Perry also involved a question about long term disability benefits, and the decision turned on the specific factual issue of whether Perry became totally disabled while he had coverage. 900 F.2d at 965. The court noted that Perry had submitted no evidence to the administrator indicating that he was totally disabled during the time he had coverage, and that Perry did not submit such evidence until he asked the district court to reconsider its grant of summary judgment for the defendant. Id. at 967. On these facts, a district court would be justified in exercising its discretion not to admit evidence beyond what was presented to the plan administrator.
 
 
 34
 Several of the other circuit opinions represent circumstances which may warrant the admission of evidence that was not before the plan administrator. For example, in Masella, the court found it necessary to have expert testimony on a complex medical issue that was critical to the interpretation of the plan terms. 936 F.2d at 104-05. In Luby, the key to resolution of the claim was the authenticity of the signatures on the beneficiary designation cards, an issue which the plan administrator, as a matter of procedure, did not consider. 944 F.2d at 1185. The district court in Luby had no evidentiary record to review so it admitted additional evidence related to this key issue. Id. The Eleventh Circuit considered evidence not previously presented to the plan administrator in Moon in part because absent ERISA, denials of insurance claims would not be deferentially reviewed. 888 F.2d at 89. In Moon, as the parties initially did in the case sub judice, the court considered the matter as it would have considered a state law claim on an insurance policy. Id. at 88. As the Moon court seemed to realize, the trust law principles which guided the Supreme Court in Firestone, although appropriate given the trust nature of most ERISA plans, are not as persuasive when applied to denials of an insurance claim. Id. at 89. In such a circumstance, it is more helpful to focus on the Supreme Court's concern that employees and beneficiaries have at least as much protection under ERISA as the protection they had prior to the statute's enactment. Situations involving an insurance company and denials of insurance claims may therefore warrant the exercise of discretion to admit evidence not before the plan administrator because of concerns about impartiality and ERISA's interest in providing protection for employees and their beneficiaries.[7]
 
 
 35
 In summary, we conclude that courts conducting de novo review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim. Exceptional circumstances that may warrant an exercise of the court's discretion to allow additional evidence include the following: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. We do not intimate, however, that the introduction of new evidence is required in such cases. A district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense.
 
 
 36
 This list of factors is not exhaustive but is merely a guide for district courts faced with motions to introduce evidence not presented to the plan administrator. In determining whether to grant such a motion, the district court should address why the evidence proffered was not submitted to the plan administrator. If the administrative procedures do not allow for or permit the introduction of the evidence, then its admission may be warranted. In contrast, if the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not necessary. If the court is faced with a complex medical issue on which testimony from experts is necessary for an adequate understanding of the issue and the administrative procedures do not have a mechanism for taking such testimony, allowing such testimony would be appropriate.
 
 
 37
 In this case, the additional evidence considered by the district court was live expert medical testimony regarding the complex issue of Mrs. Quesinberry's cause of death. Although the plan administrator reviewed Mrs. Quesinberry's medical records and statements from several doctors, the court determined that live testimony by the doctors at trial would assist the court in its de novo review of the claim. Such testimony could facilitate the understanding of complex medical terminology and causation through an exchange of questions and answers between the experts, counsel, and the court. The issue presented by Mr. Quesinberry's claim for accidental death benefits also involved the legal interpretation of a key provision in the insurance policy, namely the phrase "loss resulting directly and independently of all other causes from bodily injuries caused by accident." (J.A. at 23.) In addition, the court was presented with a situation in which the payor on the policy, LINA, was also the administrator in charge of reviewing whether the claim should be allowed, and the claim would have been treated as an insurance contract claim prior to ERISA. As we discussed above, such a situation may warrant admission of additional evidence where necessary to the protection of the interests of employees and beneficiaries. In light of all of these circumstances, the district court did not abuse its discretion in admitting additional expert testimony that was not before the plan administrator.[8]
 
 III. The Reliance Standard Test
 
 38
 In addition to its challenge to the admission of additional evidence, LINA also asserts that the district court erred in concluding that Mrs. Quesinberry's death was covered by the accidental death policy because it incorrectly applied Adkins v. Reliance Standard Life Insurance Co., 917 F.2d 794 (4th Cir.1990). In Reliance Standard, we addressed the question of whether a particular loss was covered under an ERISA-governed accidental injury insurance policy. The insurance policy required that the injury result "directly and independently of all other causes." Id. at 795. We adopted a "middle ground" position in interpreting this policy language, Reliance Standard, 917 F.2d at 797, based on the holding of Colonial Life & Accident Insurance Co. v. Weartz, 636 S.W.2d 891 (Ky.Ct.App.1982). Colonial Life described the interpretive rule as follows:
 
 
 39
 [A] pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss.... [A] "pre-disposition" or "susceptibility" to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause. A mere "relationship" of undetermined degree is not enough.
 
 
 40
 Id. at 894.
 
 
 41
 LINA contends that this test requires a two-step determination: first, whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and, second, whether this pre-existing condition, pre-disposition, or susceptibility substantially contributed to the disability or loss. This two-pronged test was not expressly stated in the Reliance Standard opinion or the Colonial Life opinion upon which it is based, particularly with regard to pre-dispositions or susceptibilities. We agree with LINA, however, and hold that courts should use this analysis in assessing insurance coverage in similar claims. To hold otherwise would lead to a hopelessly enigmatic game of semantics in which the delineation of a claimant's condition as a pre-existing infirmity or disease, rather than a pre-disposition or susceptibility, could have dispositive effect in the determination of coverage.
 
 
 42
 LINA asserts that the district court did not apply the second prong of the test and instead assumed that a pre-disposition or susceptibility could not be a substantially contributing cause. In support of this assertion, LINA cites the following sentence from the district court's opinion: "Either version [of the evidence] would fall within the classification of a 'pre-disposition or susceptibility' and, therefore, would not be a substantial contributing factor under the Reliance Standard test." (J.A. at 237). Standing alone, this sentence supports LINA's position; when the district court's entire opinion is reviewed, however, it becomes clear that the test was correctly applied. In the very next paragraph the district court specifically stated that "Mrs. Quesinberry's pre-existing condition ... was not a substantial cause in bringing about her death." (J.A. at 238). A careful review of the entire opinion indicates that the district court found that under either party's theory regarding the cause of Mrs. Quesinberry's death there was only a "mere relationship of undetermined degree" between Mrs. Quesinberry's predisposition and her death. Such a relationship is not sufficient to defeat coverage. In addition, the district court specifically found that the Renografin injection and the consequences of the injection were an accident within the meaning of the policy and that Mr. Quesinberry was entitled to recover the insurance proceeds. Although the analytical steps are not as carefully delineated as we might like, the district court properly applied both prongs of the Reliance Standard test.
 
 IV. Attorneys' Fees
 
 43
 Mr. Quesinberry appeals the district court's denial of his request for attorneys' fees, ERISA provides that "the court in its discretion may allow a reasonable attorney's fee...." ERISA § 502(g), 29 U.S.C. § 1132(g). Thus, ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court.
 
 
 44
 In Reinking v. Philadelphia American Life Insurance Co., 910 F.2d 1210, 1217-18 (4th Cir.1990), we adopted a five factor test to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA. The five factors are:
 
 
 45
 (1) degree of opposing parties' culpability or bad faith;
 
 
 46
 (2) ability of opposing parties to satisfy an award of attorneys' fees;
 
 
 47
 (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
 
 
 48
 (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
 
 
 49
 (5) the relative merits of the parties' positions.
 
 
 50
 Id. (citing Iron Workers Local # 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980).[9]
 
 
 51
 This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees. Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 258 (1st Cir.1986). Requiring district courts to justify the award or denial of attorneys' fees in terms of these five factors allows us some basis for reviewing whether the action was an abuse of discretion. See Bowen, 624 F.2d at 1266. The proper approach to these factors was described in Bowen:
 
 
 52
 No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g) [1132(g) ].
 
 
 53
 In particular types of cases, or in any individual case, however, other considerations may be relevant as well.
 
 
 54
 Id.
 
 
 55
 Applying this test, the district court found that only the second factor weighed in favor of awarding attorneys' fees to Mr. Quesinberry and consequently denied Mr. Quesinberry's request for attorneys' fees. Mr. Quesinberry argues, however, that Reinking ordinarily requires district courts to award attorneys' fees to a prevailing insured or beneficiary. In support of this argument, Mr. Quesinberry cites the following passage:
 
 
 56
 In exercising its discretion under the statute, the court may use the five factors as a guide, but it must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts. We agree with the Ninth Circuit that, in order to effectuate the remedial purposes of ERISA, a prevailing individual beneficiary "should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust."[10]
 
 
 57
 Reinking, 910 F.2d at 1218 (quoting Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984)).
 
 
 58
 We do not agree that Reinking establishes such a presumption in favor of a prevailing insured or beneficiary. It is critical to a proper interpretation of this passage to recognize that in Reinking we upheld the district court's exercise of discretion in awarding attorneys' fees. This distinction is important because the foremost principle which guides our review of attorneys' fees awards under ERISA is the discretion the statute grants to the district court.
 
 
 59
 In our view, Reinking simply affirmed that the district court should also consider the remedial purposes of ERISA in making its determination regarding attorneys' fees. The language of ERISA regarding the standard for awarding attorneys' fees could not be more straight-forward. Congress explicitly reserved the decision whether to award attorneys' fees to the discretion of the district court. 29 U.S.C. § 1132(g). There is no indication that Congress intended a mandatory fee shifting rule analogous to 42 U.S.C. § 1988, which would be the import of Mr. Quesinberry's interpretation of Reinking. We reject such an interpretation of Reinking and join the other circuits which have either concluded that ERISA does not require mandatory fee shifting or rejected an award which is essentially automatic, rather than discretionary.[11] To the extent that Reinking supports a mandatory presumption in favor of granting attorneys' fees, it is overruled.
 
 
 60
 As we noted earlier, the district court found that only one of the five factors, LINA's ability to pay, favored an award of attorneys' fees to Mr. Quesinberry.[12] Our review of this case indicates that this finding by the district court was not an abuse of discretion. Because we do not interpret Reinking to create a presumption in favor of prevailing plaintiffs, remand is not necessary and the judgment denying Mr. Quesinberry's request for attorneys' fees is affirmed.
 
 V. Post-judgment Interest
 
 61
 Mr. Quesinberry also appeals the manner in which the district court awarded post-judgment interest. The district court only awarded post-judgment interest on the principal amount of $82,500. Mr. Quesinberry argues that the district court should have ordered that post-judgment interest would accrue on $147,885.21, the $82,500 proceeds of the insurance policy plus the pre-judgment interest awarded by the court. We agree.
 
 
 62
 ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court. Whitfield v. Lindemann, 853 F.2d 1298, 1306 (5th Cir.1988), cert. denied, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989). The district court in this case exercised its discretion to award pre-judgment interest in order to compensate Mr. Quesinberry for the loss of the use of his funds. See Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.) (award of pre-judgment interest in ERISA cases within district court's discretion), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 and cert. denied, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). The rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court. United States v. Dollar Rent A Car Systems, Inc., 712 F.2d 938, 940 (4th Cir.1983) (citing E.E.O.C. v. Liggett & Myers, Inc., 690 F.2d 1072, 1074 (4th Cir.1982)). In this case the district court found the Virginia judgment rate in Va.Code § 6.1-330.54 appropriate. Applying this provision, the district court found that simple interest accrued on the principal amount of $82,500 at a rate of 12% from November 9, 1983 (the date LINA initially denied liability), through June 30, 1987, and at a rate of 8% from July 1, 1987, through December 20, 1991 (the date the judgment was entered). The total recovery, including the principal amount and the accrued interest, was $147,885.21.
 
 
 63
 In contrast to the district court's discretion in the awarding of pre-judgment interest, federal law mandates the awarding of post-judgment interest. 28 U.S.C. § 1961 (1988). While ERISA does not specifically address post-judgment interest, it does provide that the statute is not to be construed to "alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d) (1988). Therefore, the federal post-judgment interest statute, 28 U.S.C. § 1961 (1988), is applicable in ERISA cases. See I.A.M. Nat'l Pension Fund v. Slyman Indus., Inc., 901 F.2d 127, 130 (D.C.Cir.1990).
 
 
 64
 Section 1961 does not specify whether pre-judgment interest should be included in the calculation of post-judgment interest. Nevertheless, in Kaiser Aluminum and Chemical Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) the Supreme Court stated:
 
 
 65
 "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant."
 
 
 66
 (quoting Poleto v. Consolidated Rail Corp., 826 F.2d 1270, 1280 (3d Cir.1987)). We believe that awarding post-judgment interest on the entire amount the court awarded Mr. Quesinberry, including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court.[13] The pre-judgment interest Mr. Quesinberry received was simply a portion of his judgment for damages. Under § 1961, post-judgment interest should be awarded on the entire amount of the judgment. See Drovers Bank v. Nat'l Bank & Trust Co., 829 F.2d 20, 23 (8th Cir.1987) (contract interest was an element of money damages and "post-judgment interest must be awarded on the entire amount of a judgment for money damages"); United States v. Hannon, 728 F.2d 142, 145 (2d Cir.1984) ("when a prior judgment consisting of both principal and accumulated interest is not paid" court should have awarded interest on the entire amount due); Hellenic Lines Ltd. v. Gulf Oil Corp., 359 F.2d 403, 404 (2d Cir.1966) (awarding interest on judgment amount plus interest accrued prior to judgment date was appropriate). Any other result would mean that Mr. Quesinberry would not be fully compensated for any delay in recovering his monetary judgment. Therefore, we remand to the district court to award post-judgment interest on the entire $147,885.21 amount recovered by Mr. Quesinberry.
 
 VI. Conclusion
 
 67
 In summary, we adopt a scope of review for ERISA actions that gives the district court discretion to allow evidence at trial that was not before the plan administrator. Such discretion, however, should only be exercised when additional evidence is necessary for the district court to conduct an adequate de novo review of an ERISA claim. We also hold that the test outlined in Reliance Standard requires a two-pronged analysis, namely: (1) whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and (2) whether this pre-existing condition, pre-disposition, or susceptibility substantially contributed to the disability or loss.
 
 
 68
 With regard to attorneys' fees under ERISA, we hold that such awards are left to the discretion of the district court and that § 1132(g) of ERISA does not establish a presumption in favor of prevailing beneficiaries. In awarding attorneys' fees under ERISA, the district court should justify the exercise of its discretion as discussed in Section IV of this opinion. We also conclude that 28 U.S.C. § 1961 mandates the award of post-judgment interest on the entire amount of the judgment, including any pre-judgment interest.
 
 
 69
 For the foregoing reasons, we affirm the district court with the exception of its award of post-judgment interest. On that issue, we reverse and remand for an award of post-judgment interest on the entire $147,885.21 which Mr. Quesinberry recovered.[14]
 
 
 70
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 71
 WIDENER, Circuit Judge, concurring in part and dissenting in part:
 
 I.
 
 72
 I concur in all of the majority opinion except parts II and V, and as to those, I respectfully dissent. I would affirm the judgment of the district court.
 
 II.
 
 73
 As to Part II of the opinion, I dissent, but not in the sense that I necessarily disagree with the majority's reasoning.
 
 
 74
 I think we reach out too far to decide the question in this case.
 
 
 75
 We review judgments, not opinions, and I suggest that principle has been overlooked in this case. Since our principal holding affirms the judgment of the district court as to liability, I think the best way to do it is to accept the district court's quite correct finding that there was no legal significance between the evidence presented by each side as to the cause of Mrs. Quesinberry's death. Instead of merely accepting this position, which, as the majority acknowledges, is for all practical purposes a correct one, the majority takes one side of a controversial question which has caused a split in the circuits, thus unnecessarily exposing the judgment of the district court to further review.
 
 
 76
 I also should say that I agree with that part of Judge Luttig's opinion which points out that on the reasoning of the majority, a district court would never be able to say that it had not considered evidence which had been admitted. The practice of admitting evidence subject to objection in trials without juries, is so well reasoned, firmly entrenched and commonly used that it ought not to be disturbed. See, e.g. MultiMedical Convalescent, etc. v. NLRB, 550 F.2d 974, 977 (4th Cir.) (opinion by Judge Craven), cert. denied, 434 U.S. 835, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); Builders Steel Co. v. Commissioner of Internal Revenue, 179 F.2d 377, 379 (8th Cir.1950) (opinion by Judge Sanborn); Oates v. United States, 233 F. 201, 204-206 (4th Cir.) (opinion by Judge Woods), cert. denied, 242 U.S. 633, 37 S.Ct. 16, 61 L.Ed. 538 (1916); Wigmore on Evidence, Tiller's Revision (1983), § 4d.1; § 19, p. 852.
 
 III.
 
 77
 Absent a statute or an agreement between the parties an award of interest on interest is impermissible either under general federal or common law. See, e.g. Cherokee Nation v. United States, 270 U.S. 476, 490, 46 S.Ct. 428, 433-34, 70 L.Ed. 694 (1926) (stating "the general rule" that "compound interest is not allowed to be computed on a debt"); Pindall's Ex'X v. Bank of Marietta, 37 Va. (10 Leigh) 481, 484-85 (1839) (same).
 
 
 78
 28 U.S.C. § 1961(a) states, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." Although § 1961 awards post-judgment interest on any money judgment, the plain meaning of § 1961 does not require an award of interest on interest: "As properly interpreted, section 1961 creates a logical uniformity--prejudgment interest where appropriate is awarded up to the date of judgment; postjudgment interest then takes over." Magee v. U.S. Lines, Inc., 976 F.2d 821, 824 (2d Cir.1992). In Magee, the court reversed a holding of the district court which had entered a judgment which had allowed post-judgment interest from the date of a verdict rather than from the date of judgment. Its reasoning is directly on point here, and is that the plaintiff, unless the judgment was reversed, "... would, under the district court's holding, be entitled to receive double interest from December 23, 1991 [the date of verdict] to January 8, 1992, [the date of judgment]." 976 F.2d at 824.
 
 
 79
 While the majority holds that § 1961 requires a compounding of interest, I am of opinion that the authorities cited by the majority do not support that holding. In Kaiser Aluminum, supra, the Supreme Court defined the purpose that post-judgment interest serves, but the Court did not go so far as to state that § 1961 abrogates the general federal and common law and requires an award of interest on interest. In fact, the Court disallowed an equitable claim for a higher interest rate than that provided under § 1961 by adhering to the rule that judgments do not bear interest at common law absent a statutory provision to the contrary. See Kaiser Aluminum, 494 U.S. 827, 840, 110 S.Ct. 1570, 1578, 108 L.Ed.2d 842 (1990) (citing Pierce v. United States, 255 U.S. 398, 406, 41 S.Ct. 365, 368, 65 L.Ed. 697 (1926)). Because § 1961 was such a statutory provision the Court held that "[w]here Congress has not seen fit to provide for a higher rate of interest ... the courts may not legislate to the contrary." 494 U.S. at 840, 110 S.Ct. at 1578.
 
 
 80
 Finally as to Kaiser Aluminum, it is noteworthy that the quote on page 1031 of the majority opinion does not include the next following sentence which is:
 
 
 81
 Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. 494 U.S. at 836, 110 S.Ct. at 1576.
 
 
 82
 The only meaning of the sentence I have just quoted is that in the usual case, such as the one at hand, damages are not ascertained until judgment is entered. Since damages have not been ascertained until judgment has been entered, requiring the accumulation of double interest on the same is entirely contrary to the long standing treatment of the same question as exemplified by Cherokee Nation, Pindall and the many other cases on the same subject.
 
 
 83
 As for the cases cited by the majority, I am of opinion that they should be limited to their facts rather than interpreted as requiring an award of interest on interest under § 1961 in all instances. Drovers Bank v. Nat'l Bank & Trust Co., 829 F.2d 20 (8th Cir.1987), illustrates the specific exception that an agreement between the parties may provide for a recovery of interest on interest. Based on the terms of a loan-participation agreement, Drovers Bank obtained a judgment for principal and contract interest, and the Magistrate awarded post-judgment interest on the entire amount.* 829 F.2d at 21. In upholding the award of post-judgment interest on the contract interest, the Eighth Circuit stated that contract interest constituted an element of Drovers' damages under the agreement and thus post-judgment interest should accrue on the entire amount. 829 F.2d at 23. Similarly, in Hellenic Lines Limited v. Gulf Oil Corp., 359 F.2d 403 (2d Cir.1966), although the court allowed interest on interest, the underlying claim involved a contract dispute and the interest contained in the original judgment apparently was awarded pursuant to the contract. See Hellenic Lines Limited v. Gulf Oil Corp., 340 F.2d 398, 402 (2d Cir.1965) (affirming award of principal under contract but reversing and remanding for new trial adjudicating liability for interest and costs). Finally, in United States v. Hannon, 728 F.2d 142, 143 (2d Cir.1984), the United States was seeking to renew a judgment against Hannon that remained unsatisfied. Reversing a summary judgment ruling for Hannon, the Second Circuit allowed the subsequent action and directed the district court to enter a new judgment against Hannon, comprised of the original judgment plus accrued post-judgment interest. 728 F.2d at 145. The court then awarded post-judgment interest on the entire amount, thus compounding the original award of post-judgment interest. 728 F.2d at 146.
 
 
 84
 The fact that the Second Circuit considered Kaiser Aluminum in its opinion in Magee and decided the Magee case the way it did, I think, is an indication that Hellenic Lines and Hannon (although unmentioned in Magee) should not be construed to require post-judgment interest on pre-judgment interest in every instance, rather only to permit it when authorized by proper exception such as a previous contract interest judgment, as was the case in Hellenic Lines, or debt on a judgment, which was the case in Hannon.
 
 
 85
 Pursuant to the general law and the plain meaning of § 1961, the district court awarded post-judgment interest upon the principal judgment and not upon the award of pre-judgment interest. Because § 1961 applies to "any money judgment," by reversing the district court, the majority holds that § 1961 requires an award of post-judgment interest on pre-judgment interest in all civil cases, whether based on diversity or federal question jurisdiction, and regardless of the nature of damages involved. I am of opinion that § 1961 does not so require an award of interest on interest in all such instances. I would affirm the district court's calculation of post-judgment interest.
 
 
 86
 I am authorized to state that Judge Wilkinson joins in Part III of this opinion.
 
 
 87
 PHILLIPS, Circuit Judge, concurring in part and dissenting in part:
 
 
 88
 I join Parts I and II of the majority opinion, specifically concurring in the holding in Part II that, for the reasons there given, district courts must have discretion to receive new evidence in appropriate circumstances when conducting de novo review of plan administrators' denials of ERISA-governed employee benefits, and that the district court did not abuse its discretion in receiving new evidence in this case.
 
 
 89
 I dissent from the holding in Part III which affirms the district court's award of insurance proceeds under the ERISA-governed accidental death insurance policy here in issue. I believe the district court failed properly to apply the test of insurance coverage dictated by Adkins v. Reliance Standard Life Insurance Co., 917 F.2d 794 (4th Cir.1990), and that a remand for its proper application should be ordered.
 
 
 90
 Although I would order a remand whose result conceivably could moot the attorney fee and post-judgment interest issues dealt with in Parts IV and V of the majority opinion, I concur in the analyses and holdings of those Parts as properly establishing the law of the case on those issues.
 
 
 91
 -o-
 
 
 92
 As indicated, I disagree with the majority's conclusion that the district court properly found on its de novo review of the insurer's denial of the claim for insurance benefits, that on the facts and under the insurance policy's critical coverage provision, the claimant was entitled to the death proceeds.
 
 
 93
 The critical coverage provision insures against "loss resulting directly and independently of all other causes from bodily injuries caused by accident." The specific coverage issue raised by the facts here involves application of this provision to a situation where an insured's death may have resulted not alone from "injuries caused by accident," but to some degree from the interaction of those accident-caused injuries with a pre-existing physical condition. As the majority recognizes, we have a rule in this circuit that governs judicial inquiry into the coverage issue raised by such situations. As properly derived by the majority from our decision in Adkins v. Reliance Standard Life Insurance Co., 917 F.2d 794, 797 (4th Cir.1990), it mandates in cases of death a two-step inquiry: first, whether the insured-deceased had a pre-existing disease, predisposition, or susceptibility to injury; and, second, whether that pre-existing disease, pre-disposition, or susceptibility substantially contributed to the death. Op. 1028.
 
 
 94
 This inquiry, particularly its second prong, which requires determining the "substantiality" of a pre-existing physical condition as a contributing cause of death, obviously is a difficult one. But it is critical to proper application of the Reliance Standard rule, which was itself based upon the holding in Colonial Life & Accident Insurance Co. v. Weartz, 636 S.W.2d 891 (Ky.Ct.App.1982), which emphasized that
 
 
 95
 [A] "predisposition" or "susceptibility" to injury ... does not necessarily amount to a substantial contributing cause. A mere "relationship" of undetermined degree is not enough.
 
 
 96
 Id. at 814.
 
 
 97
 Purporting to apply the Reliance Standard test, the district court indicated an understanding of it under which no predisposition or susceptibility could be a substantially contributing cause. In finding coverage on the facts of record, the court said
 
 
 98
 As the finder of fact, I see no legal significance between the evidence presented by each side as to the cause of Mrs. Quesinberry's death. Both versions demonstrate that Mrs. Quesinberry had a pre-existing condition which made Renografin 60 toxic to her. It is clear that Renografin 60 is a standard dye used thousands of times for radiographic studies without adverse effects on the patient. Thus, whether the adverse reaction to the dye was due to some unspecified condition which caused a sudden drop in her calcium level or whether it was due to an undiagnosed and rare form of sarcoidosis of the central nervous system is of little moment. Either version would fall within the classification of a "pre-disposition or susceptibility" and, therefore, would not be a substantially contributing factor under the Reliance Standard test.
 
 
 99
 Quesinberry v. Life Ins. Co. of North America, No. 86-0250-R, slip. op. at 7 (W.D.Va. Oct. 2, 1992) (emphasis added).
 
 
 100
 In effect, the district court stopped inquiry after finding that Mrs. Quesinberry had a pre-existing susceptibility to injury from the injection of Renografin 60. Proper application of the Reliance Standard test required that it proceed to the second inquiry: whether this pre-existing condition substantially contributed to her death, in which case coverage was properly denied, or was at most a "mere relationship of undetermined degree," in which case coverage was improperly denied.
 
 
 101
 The majority concedes the difficulty posed by the district court's statement of its apparent understanding of the Reliance Standard test, but reasons that the court couldn't have meant what it said in view of what it then did. Op. 1028.
 
 
 102
 With all respect, I don't think we properly can proceed that way. Obviously, we should simply overlook plain legal slips of the tongue when we can be sure they are that. Our business doesn't include insuring doctrinal purity in everything said by trial judges acting under pressures we don't experience, but only insuring--as far as we are able--that principle was properly applied. But when the record at best leaves matters unclear, I think we are obliged in fairness to assume legal misapprehension, and unless it appears harmless, at least to remand to make sure. That is the way I assess the record here. It can best be read in its totality as confirming that what the court said in the quoted portion of its memorandum opinion is a perfect reflection of its understanding of the rule and its proper application.
 
 
 103
 There is no specific analysis in the court's opinion of the causation issue other than that reflected in the above-quoted portion. The majority points to the summary conclusion that "Mrs. Quesinberry's pre-existing condition ... was not a substantial cause in bringing about her death." Op. 1028. But the recitation of this conclusion can't do the service the majority assigns it. Best indications are that this conclusion, although it tracks the Reliance Standard formulation, was based on a perception that no pre-existing condition could be a substantial cause, and not on any independent inquiry into the substantiality of this particular condition as contributing cause.
 
 
 104
 Even if it be thought not plain that flat legal misapprehension was at work here, it is at least sufficiently a possibility that I think we should take the precaution of remanding to make sure. As earlier noted, a factual inquiry into substantiality of cause is necessarily a difficult undertaking. But the insurer here is entitled--just as is the ERISA-favored claimant--to have that difficult inquiry properly made and documented according to controlling law. It is of course a possibility that, as the insurer presumably determined, the pre-existing condition here was, under the law, a bar to recovery of these insurance proceeds, however one's sympathies may lie.
 
 
 105
 I would remand for reconsideration of the coverage issue on the existing or a re-opened record in the district court's discretion.
 
 
 106
 NIEMEYER, Circuit Judge, concurring in part and dissenting in part:
 
 
 107
 The disposition by a plan administrator of a claim made against an employee welfare plan is essentially a contractual procedure established by the plan, which is sanctioned and encouraged by ERISA. A plan's contractual requirement that claims be presented to the administrator must, I believe, be enforced by the courts to the same extent as any other contractual obligation. If the obligation to present a claim to the administrator embraces a requirement to present all evidence relative to the claim, a claimant should not be allowed to frustrate that requirement by presenting it for the first time before the district court. I am afraid that, by giving the district court broad discretion to admit almost any evidence not presented to the administrator, we undermine the contractual and statutory structure in place for the administration of plans, and we support the claimant's effort to bypass contractually established procedures. Moreover, the courts would tend to become places for processing initial claims under welfare plans--a situation never intended by the plan or by ERISA.
 
 
 108
 While Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), requires de novo review of the administrator's denial of a nondiscretionary claim, it does not, I believe, authorize the courts to forego the duty of enforcing the procedural terms of welfare plans. When the claimant seeks benefits in court under a contract that requires him first to present his evidence in connection with the claim to the administrator, he should not be entitled to frustrate that commitment by making his evidentiary case for the first time in the court.
 
 
 109
 The proper role of the court, I submit, in reviewing such claims denied by welfare plans is to consider the record made before the administrator to determine if the administrator breached the plan's contractual obligation in denying the claim. Evidence constituting that record, along with any other evidence relevant to the meaning of the contract or its performance, that was not required to be presented before the administrator, would become the evidence for the court's de novo review. This I believe is the approach taken in Masella v. Blue Cross and Blue Shield, Inc., 936 F.2d 98 (2d Cir.1991), and I would vote to adopt it as the appropriate standard for our circuit if we were to reach the issue.
 
 
 110
 In this case, it would appear that the district court did not rely on additional evidence presented to the court, even though some new medical opinions were received into evidence, and therefore I share the views expressed by Judge Widener in his dissenting opinion, Part II, and by Judge Luttig in his dissenting opinion, Part I.
 
 
 111
 I readily join in the remaining parts of the majority opinion, dissenting only from Part II.
 
 LUTTIG, Circuit Judge, dissenting:
 
 112
 The question of the appropriate scope of review of benefits decisions by ERISA plan administrators whose plans do not vest them with discretionary powers, in my view, is not fairly presented under the facts of this case, and I would decline to reach that issue. I would vacate the district court's judgment and remand, however, because, like Judge Phillips, I believe that the district court misapplied Adkins v. Reliance Standard Life Ins. Co., 917 F.2d 794 (4th Cir.1990). Accordingly, I dissent.
 
 I.
 
 113
 "Both appellant and appellee presented additional or 'new' expert testimony at trial," Appellee's Br. at 5, and the district court discussed the new expert medical testimony in its opinion. See J.A. at 233-35. Ultimately, however, the court concluded that this evidence was immaterial to its resolution of the case. See id. at 237 ("I see no legal significance between the evidence presented by each side as to the cause of Mrs. Quesinberry's death."). The plaintiff himself even concedes that "most, if not all, of the necessary facts are uncontroverted and were established by the decedent's medical records," id. Given that the district court did not rely for its disposition of the case on evidence not presented before the plan administrator, I would not decide whether the district court erred in admitting the new evidence in the first place. Any discussion in the majority opinion of this aspect of the proceedings below is necessarily dicta.
 
 
 114
 The majority concedes that "this may be a legitimate position in retrospect." Ante at 1027 n. 8. It rationalizes its decision of this issue, however, with the circular reasoning that the district court's "conclusion as to the significance of the evidence was necessarily influenced by the testimony it heard." Id. On this logic, a district court will have abused its discretion whenever it evaluates new evidence but ultimately declines to admit it, because the decision not to admit the evidence will have been influenced by a review of that evidence. There is no less reason for concluding that a district court can compartmentalize evidence that it admits (as the district court represented that it did here) than that the court can compartmentalize evidence that it does not admit (as the majority readily assumes it can). The majority's approach appears satisfactory in this case because the district court ultimately chose to admit the evidence. The unanticipated results of the majority's reasoning, however, highlight the perils that await the decision of abstract questions of law.
 
 II.
 
 115
 I also dissent from the majority's affirmance of the district court's award of insurance proceeds. For the reasons stated in Judge Phillips' separate opinion, I believe the district court misunderstood, and therefore misapplied, the Reliance Standard test. Unlike Judge Phillips, however, I decline to concur in the analyses and holdings of Parts IV and V of the majority opinion, given that the issues addressed in those sections might have become moot following remand.
 
 
 
 *
 Judge Sprouse heard oral argument in this case but later took senior status and did not participate in the decision
 Experts testified that sarcoidosis is a disease characterized by inflammatory granulomata occurring in many tissues of the body and that sarcoidosis with involvement of the central nervous system is rare. Experts for Mr. Quesinberry and LINA testified at length regarding the nature of Mrs. Quesinberry's sarcoidosis and the extent of its effect on her death.
 
 
 [2]
 Mr. Quesinberry originally filed an action for breach of contract under the district court's diversity jurisdiction. During the discovery stage of the case it was determined that ERISA governed the claim. The district court then dismissed the case while Mr. Quesinberry exhausted his administrative remedies. After exhaustion of his administrative remedies again resulted in denial of his claim, Mr. Quesinberry filed an amended complaint under ERISA
 
 
 [3]
 We note that the standard of review in this case is, as it was in Firestone, concededly one of de novo. We do not address here the situation where the plan or trust instrument reserves to the administrator or fiduciary discretionary powers. In such cases, "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." Firestone, 489 U.S. at 111, 109 S.Ct. at 954, quoting Restatement (Second) of Trusts § 187 (1959)
 
 
 [4]
 In support of this position, the Perry court cited Questech Inc. v. Hartford Accident & Indemnity Co., 713 F.Supp. 956, 962 (E.D.Va.1989), which applied our rulings regarding the scope of evidentiary review in Berry and Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir.1988), pre-Firestone cases, to the post-Firestone de novo standard of review. Perry, 900 F.2d at 966 n. 3
 
 
 [5]
 In so doing, the court pointed out that the Seventh Circuit in Petrilli v. Drechsel, 910 F.2d 1441, 1445-47 (7th Cir.1990), also distinguished between evidence regarding historical facts and evidence relating to interpretation of the terms of a plan
 
 
 [6]
 As recognized in Berry, remand to the plan administrator is also available to the district court, where necessary. We do not believe, however, that remand in every case of an inadequate record is consistent with the de novo standard of review or in the interests of judicial economy. For example, the district court may exercise its discretion to remand a claim where there are multiple issues and little evidentiary record to review. Application of the de novo standard, as opposed to the arbitrary and capricious standard in Berry, however, does not require such a result
 
 
 [7]
 In Firestone, the Supreme Court chose not to base its enunciation of the standard of review in Firestone on the concern for impartiality and possible conflicts of interests which the Court of Appeals had expressed. 489 U.S. at 115, 109 S.Ct. at 956 (citing 828 F.2d at 143-146). We do not think that this choice by the Supreme Court means that the nature of the payor is never a legitimate factor for the court to address. In the limited circumstance of a court's exercise of discretion with regard to the scope of review, consideration of the nature of the administrator or payor, particularly if they are the same entity, is appropriate
 
 
 [8]
 An argument could be made that we need not even address whether the district court's admission of this evidence was appropriate because the district court, as the finder of fact, found no legal significance between the evidence submitted by opposing parties regarding the cause of Mrs. Quesinberry's death. While this may be a legitimate position in retrospect, the district court did hear medical testimony which was not presented to the plan administrator and its conclusion as to the significance of the evidence was necessarily influenced by the testimony it heard. In such a circumstance, we appropriately address whether the scope of review under ERISA allowed the district court to admit this additional evidence in the first place
 
 
 [9]
 Although we adopted the five factor test from Bowen, the first court to describe these factors was the Tenth Circuit in Eaves v. Penn, 587 F.2d 453, 465 (10th Cir.1978). Prior to Reinking, we applied the Bowen factors in Tenneco v. First Virginia Bank, No. 82-1158, 4 E.B.C. 1344 (4th Cir. April 5, 1983) (per curiam), an unpublished opinion of this court and hence non-binding circuit precedent
 
 
 [10]
 Mr. Quesinberry also argues that the district court's decision should be addressed in light of Rodriguez v. MEBA Pension Trust, 956 F.2d 468 (4th Cir.1992). Both the opinion and judgment of this court in Rodriguez were vacated upon granting of rehearing en banc. See 4th Cir.R. 35(c). The appeal in Rodriguez was subsequently dismissed by stipulation of the parties pursuant to Fed.R.App.P. 42(b). The opinion and judgment remain vacated, with no precedential value
 
 
 [11]
 See Armistead v. Vernitron Corp., 944 F.2d 1287, 1302 (6th Cir.1991) (declining to adopt a rule requiring the awarding of fees to a prevailing ERISA plaintiff absent special circumstances); Monkelis v. Mobay Chemical, 827 F.2d 935, 936 (3d Cir.1987); (holding that ERISA does not automatically mandate an award of attorneys' fees to a prevailing party); Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 258 (1st Cir.1986) (adopting the five factor approach for prevailing plaintiffs and defendants and holding that no one factor is dispositive); McKnight v. Southern Life & Health Ins. Co., 758 F.2d 1566, 1572 (11th Cir.1985) (applying the five factor test, with no one factor being decisive, and holding that ERISA does not award attorneys' fees to the prevailing party outright); Gordon v. United States Steel Corp., 724 F.2d 106, 108 (10th Cir.1983) (granting of attorneys' fees under ERISA is not to be done as a "matter of course" but is discretionary in nature); Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund, 673 F.2d 931, 941 (7th Cir.1982) (ERISA discretionary provision for awarding attorneys' fees should not be construed as "virtually mandatory"), vacated on other grounds, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). But see Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 590 (9th Cir.1984) (prevailing plaintiff in ERISA action should ordinarily recover attorneys' fees); Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir.1980) (same); but cf. Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 829-30 (7th Cir.1984) (concluding that "ERISA does not create a presumption in favor of a prevailing plaintiff's request for fees and against a prevailing defendant" but adopting the prevailing party presumption used in Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1988))
 
 
 [12]
 Consideration of the second factor should be undertaken with due regard for the type of payor and the nature of the ERISA claim. In this case, LINA is an insurance company, and the ERISA claim is for the proceeds of an insurance policy. LINA is similarly situated to the insurance company in Reinking, which the court found "could easily afford to satisfy an award." 910 F.2d at 1218. In other contexts, where the fee award would be paid out of the plan assets and not "out of the pockets of the people responsible for the denial of benefits" the ability-to-pay factor might favor a denial of attorneys' fees and the deterrent effect considered in factor three would also be diminished. Bittner, 728 F.2d at 829
 
 
 [13]
 Foltz v. U.S. News & World Report, Inc., 613 F.Supp. 634 (D.D.C.1985), is not to the contrary. Foltz held that trustees, including employee benefit plans, should generally be charged with simple interest at the applicable legal rate. Id. at 648-49. LINA argues that to award post-judgment interest on the pre-judgment interest amount would effectively be an award of compound interest. We disagree. Foltz addressed the question of whether pre-judgment interest should accrue at a compound or simple rate of interest. It is correct that trustees are generally liable only for simple interest, unless the trustee " 'uses trust funds in his own business and it does not appear how much he has earned thereon.' " Federal Sav. & Loan Ins. Corp. v. Quality Inns Inc., 876 F.2d 353, 359 (4th Cir.1989) (quoting Restatement (Second) of Trusts § 207, cmt. (d)). We do not disagree with Foltz that pre-judgment interest should normally accrue at a simple rate of interest rather than compound. Our conclusion here only directs the post-judgment award of interest on interest, but it does not require compound pre-judgment interest. We also note that the district court explicitly stated that the pre-judgment interest accrued at simple interest rates
 
 
 [14]
 The district court issued its order in this case on October 2, 1991, and deferred entering judgment pending argument on the issues of pre-judgment interest and attorneys' fees. On December 20, 1991, the court entered the judgment for Mr. Quesinberry, which included pre-judgment interest accruing up to December 20. Post-judgment interest is to be calculated on the entire amount of Mr. Quesinberry's judgment from the date of the December 20, 1991, order
 
 
 *
 The Magistrate also awarded pre-judgment interest. 829 F.2d at 21. The eighth circuit reversed the award of pre-judgment interest because awarding both contract interest and pre-judgment interest violated Iowa law by duplicating the recovery of interest. 829 F.2d at 22-23